**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NORMA OLIVER and MATT TOMS, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiffs*, | |
| *v.* | |
| FUNAI CORPORATION, INC., a New Jersey corporation, | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Norma Oliver ("Oliver") and Matt Toms ("Toms") (together, "Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Funai Corporation, Inc., ("Funai" or "Defendant") based upon its sale of defective televisions. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### NATURE OF THE ACTION

1.     Defendant Funai markets and sells televisions under the Emerson and Magnavox brand names. In an effort to increase its profits, Defendant manufactured its Emerson LC320EM2 and Magnavox 32MF301B 32-inch televisions ("Defective TVs"), and potentially additional models, with faulty—and presumably cheaper—components.

2.     Consumers looking to buy televisions expect that all modern TVs will work for nearly a decade under normal usage. This expectation was created in part due to those in the

consumer television industry representing that modern TVs will last for approximately 60,000 hours. Funai has contributed to this expectation, specifically through its express representations that its TVs are "manufactured to provide many years of useful life."

3.     Unfortunately—and as consumer complaints corroborate—the Defective TVs were designed to have a lifespan of less than 1% of the average modern TV and often fail in as little as five months or 190 hours of use. The premature failure is caused by Funai's use of faulty "power supply boards"[1] that degrade over time. Without repairing or replacing the power supply boards—which in many instances can cost more than 50% of the Defective TVs' purchase price—the TVs fail to operate and are worthless.

4.     Accordingly, this putative class action lawsuit seeks (i) to prevent Defendant from continuing to misrepresent the expected operational lifespan of the Defective TVs, and (ii) damages for those who purchased the Defective TVs.

## PARTIES

5.     Plaintiff Norma Oliver is a natural person and citizen of the State of Massachusetts.

6.     Plaintiff Matt Toms is a natural person and citizen of the State of Arizona.

7.     Defendant Funai Corporation, Inc. is a corporation incorporated in and existing under the laws of the State of New Jersey with its principal place of business located at 201 Route 17, Suite 903, Rutherford, New Jersey 07070. Funai does business throughout the United States and the State of New Jersey, including in this District.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

---

[1]     As explained more fully below, power supply boards are components that provide and regulate the electricity that is needed for modern television displays.

1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action. This Court also has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 2301, *et seq.*, as the action arises in part under the Magnuson-Moss Warranty Act, which is a federal statute.

9.     This Court has personal jurisdiction over Defendant because it conducts business in this District, is headquartered and registered to do business in this District, and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District, the events underlying this action occurred here, and the decisions and actions at issue in this case emanated from this District.

## FACTUAL BACKGROUND

### I.     A Brief Overview Of Funai And Its Emerson And Magnavox TVs.

11.     Funai Corporation is a leading manufacturer of liquid crystal display ("LCD")[2] televisions. In addition to selling products under the "Funai" brand name, Defendant also manufactures and sells products under the "Emerson" and "Magnavox" brand names licensed from non-parties Emerson Radio Corporation, and Philips North America Corporation, respectively.

12.     Amongst the Emerson and Magnavox products that Defendant manufactures and sells are the Emerson LC320EM2 and Magnavox 32MF301B 32-inch LCD TVs that typically

---

[2]     An LCD is a display that uses an electronically controllable material (liquid crystals) in a way that can be manipulated to produce an image. WordNet® 3.0. Princeton University, *liquid crystal display*, dictionary.reference.com/browse/liquid+crystal+display (last visited July 14, 2014).

retail for $200 or more. Cosmetic differences aside, the Emerson LC320EM2 and Magnavox

32MF301B televisions are effectively the same. Importantly, both suffer from the same fatal

defect with faulty power supply boards that causes them to completely fail in as little as five

months or 190 hours of use.

## II.   Modern LCD TVs Are Expected To Last For Tens Of Thousands Of Hours And Funai Represents That Its TVs Will Last For "Years."

13.   Over the past decade, LCDs have become the primary technology that powers

consumer televisions, overtaking several other technologies (*e.g.*, "plasma" and "CRT" TVs)[3]

along the way. A contributing factor to the widespread adoption of LCD TVs is the consumer

expectation that their lifespan exceeds 10 years with normal usage. This expectation was created

by those in the television industry and was bolstered by Defendant Funai's express

representations to its (potential and actual) customers that its TVs will operate for "years."

14.   According to academic articles and consumer buying guides related to consumer

televisions, LCD TVs have approximate lifespans of 60,000 hours. One study compared the

lifespans of several television technologies and found that LCD televisions "last between 30,000

and 60,000 hours."[4] At a reasonable usage rate of eight hours per day, that represents a lifespan

of over 10 years. Another article describes that for LCDs, the "technical lifespan is more than

60,000 hours which is equivalent to about 20 years at 8 hours a day."[5]

---

[3]   "Plasma" televisions utilized a competing technology that arguably produced a higher-quality picture but typically weighed more, cost more, and used more energy. "CRT," or cathode ray tube televisions are the prototypical televisions that have fallen out of favor for their large physical size.

[4]   K. Opara Felix, I. Aririguzo Marvis, and C. Agbaraji Emmanuel, *Comparative Analysis and Performance Features of Plasma, LCD and CRT Screens: Operating Features, Merit and Recommendations*, 2 Academic Research International 2, 146 (2012).

[5]   Won Young Park, *TV Energy Consumption Trends and Energy-Efficiency Improvement Options,* Lawrence Berkeley National Laboratory: Lawrence Berkeley National Laboratory. LBNL Paper LBNL-5024E (2011).

15.    Consumer TV buying guides also report the same lifespan for LCD TVs. Nonparty Ebay.com—one of the largest online retailers in the world—states that, "LCD TVs are [] expected to operate for approximately 60,000 hours, or about 20 years."[6] LCDTVBuyingGuide.com, a popular online resource for consumers, reiterates the "60,000 hours" figure, stating that "If watching TV was your full-time job, and you did it 24 hours a day, it would take you almost 7 years to wear out your LCD display. With more normal viewing habits of, say, 8 hours per day, you can extend the lifespan of your TV by a decade or more (to about 20 years)!"[7]

16.    Moreover, Defendant Funai represents to consumers that its TVs will last for "years" in at least two ways. First, Funai states in its televisions' manuals that are included with the purchase of each television that the TVs will "provide many years of useful life." And second, Funai includes an "energy guide" label affixed to every TV that it offers for sale that represents an operational life of at least one year.

17.    To start, Funai states in the Defective TVs' manuals that the TVs were made to last for years. In prominent, bolded text, Funai explains that it "manufactured" the TVs in a way to "provide **many years** of useful life." (*See* Figure 1.)

> **The LCD panel is manufactured to provide many years of useful life. Occasionally a few non active pixels may appear as a tiny spec of color. This is not to be considered a defect in the LCD screen.**
> (**Figure 1.**)

18.    In addition, Funai affixes "energy guide labels" onto the exterior of its TVs'

---

[6]    Ebay Inc., *How Long Is the Typical Lifespan of an HDTV Compared to Standard-Definition TVs? | eBay*, http://www.ebay.com/gds/How-Long-Is-the-Typical-Lifespan-of-an-HDTV-Compared-to-Standard-Definition-TVs-/10000000177630568/g.html (last visited July 14, 2014).

[7]    *LCD TV Buying Guide: LCD TV Misconceptions: Six Common Myths About LCD Television Displays*, http://lcdtvbuyingguide.com/lcdtv/lcdtv-misconceptions.shtml (last visited July 14, 2014).

displays and includes a link to the energy guide when it markets the Defective TVs online. (Figure 2, showing the "energy guide" disclosures Funai affixed to the Defective TVs.) Funai states in the energy guides that it estimates $13 in "yearly" energy costs to operate one of the Defective TVs for "5 hours use per day." That is, Funai represents that the Defective TVs will operate for a bare minimum of 1,825 hours (*i.e.*, 5 hours per day multiplied by 365 days per year) and suggests that the energy costs will be incurred "yearly" (as opposed to once).



(**Figure 2.**)

19.     Unfortunately, Funai's TVs don't last for "years," for 60,000 hours, or for even 1,800 hours—nor can they "provide many years of useful life" for one simple reason: Funai designed and manufactured the Defective TVs with faulty components.

### III.    Funai Designed Its TVs To Fail After Just Several Months Of Use.

20.     Although Funai represents to the consumers that its TVs will last for "years," the Defective TVs often fail after just a few months or several hundred hours of use. The cause of the Defective TVs' premature failure is Funai's use of faulty power supply boards in its televisions.

21.     Modern LCD televisions, including the Defective TVs, are comprised of several different components, such as a display panel (*i.e.*, the liquid crystal display and its controller) and a power supply board ("PSB"). (*See* Figure 3, on the following page, showing Defendant's diagram of the Defective TVs with the PSB circled in red.)

22.     The PSB regulates and routes electricity for the LCD panel. The PSB converts the

standard 120-volt "AC" (*i.e.*, alternating current) power found in residential homes to the "DC" (*i.e.*, direct current) power that LCD panels require. Without properly regulated power, the LCD panels cannot operate and the televisions will stop displaying a picture.



(**Figure 3.**)

23.    Notably, Funai opted to manufacture its Defective TVs with low-quality (and likely low-cost) PSBs in an apparent attempt to increase its profit margins. Over time (in as little as 5 months or 190 hours of use) the components in Funai's low-quality PSBs degrade from normal, everyday use—unlike normal PSBs that last for the entire 60,000-hour TV lifespan. The components' degradation then causes the PSBs to lose their ability to adequately regulate and deliver proper voltage to the LCD panels.[8] Accordingly, the PSBs' failure manifests itself with a loss of picture quality, such as the introduction of "noise" (*e.g.*, a grainy or erratic picture), and eventually the complete failure of the TVs.

24.    When the PSBs predictably fail, there are only two ways to fix the disabled

---

[8]    On information and belief, Funai acquired its knowledge of the defective PSBs through sources not available to Plaintiffs and the members of the putative Class, including but not limited to pre-release testing data, early consumer complaints about the Defective TVs to Funai and retailers selling the Defective TVs, testing conducted in response to those complaints, aggregate data (*e.g.*, return rate data) from retailers, and from other internal sources that will be revealed through discovery.

televisions. The first is by purchasing and installing a replacement PSB. The second way—which can be a much more difficult task—is to first identify which components on the PSB failed and then replace them one by one. The cost to repair or replace the PSBs can range from $50 to more than $190—often 50% of the cost of the Defective TVs themselves.

## IV.    Consumers Are Upset And Are Left To Fix The Defective TVs On Their Own.

25.    The consistent failure of Funai's televisions has understandably upset consumers that were duped into buying the Defective TVs. As such, many frustrated consumers have turned to the internet to voice their displeasure.

26.    One such consumer states that he "bought two of these TV's … and wouldn't you know it that both tv's had the invertor power boards [*i.e.*, PSBs] go out on them with in two days of each other" and that he will have to "pay to have another board installed at $190 dollars each."[9] Another consumer states that she bought one of Funai's TVs for her son but "then one day it turns off and will not turn back on. I call customer service which told me to do everything I already did and then tells me that I have to take it to a repair man 50 miles away. I have two other OLDER tvs that I have had for over 10 years without any problems. Save your money unless you are willing to pay the same amount a year and half later to get it fixed."[10] Likewise, a

---

[9]    *Amazon.com: Dave's review of Emerson LC320EM2 32" LCD Television 720p 6...*, http://www.amazon.com/review/R5YYO139DFYT6/ (last visited July 14, 2014); *Amazon.com: Customer Reviews: Emerson LC320EM2 32" LCD Television 720p 60 Hz*, http://www.amazon. com/Emerson-LC320EM2-LCD-Television-720p/product-reviews/B005RQMP5K/ (last visited July 14, 2014) (listing 44 of 66 consumer reviews for the LC320EM2 as having one out of five "stars" with many referring to the TV's propensity to fail); *Emerson 32" Class LCD 720p 60Hz HDTV, LC320EM2 Customer Ratings & Reviews - Top & Best Rated Products – Walmart*, http://reviews.walmart.com/1336/16775701/emerson-32-class-lcd-720p-60hz-hdtv-lc320em2-reviews/reviews.htm (last visited July 14, 2014) (showing 45 of 89 consumer reviews as having one star).

[10]    *Emerson 32" Class LCD 720p 60Hz HDTV, LC320EM2 Customer Ratings & Reviews - Top & Best Rated Products – Walmart*, http://reviews.walmart.com/1336/16775701/emerson-32-class-lcd-720p-60hz-hdtv-lc320em2-reviews/reviews.htm (last visited July 14, 2014).

consumer that purchased the Magnavox Defective TV wrote, as a reason to not purchase the TV: "Will die in <1 year," and went on to say that they "bought this TV 7 months ago and I liked it[] until yesterday when I was watching TV and it went black. The TV just DIED. Black screen, no sound, no warning[] either. It will just not turn back on."[11]

27.     Similarly, a consumer wrote that "I bought quite a few of these TV's because I felt that Magnavox was a quality, reliable company and the pricing was good. I had one of the sensors on the tv break within 2 weeks of installation, poor quality manufacturing, and Magnavox refused to consider repairing it because they said that I must have caused the damage. Since then I have had two of the TV's just go dead in the middle of watching programs."[12]

28.     Another commenter claims to have actually worked "for the Company that makes these TVs" and warns consumers, "DON'T BUY IT." She goes on to say, "If I had a penny for each time I had a customer call in and say that their LC320em2 TV no longer powers on after 5 months of use, I would be filthy rich …. I'm tired of having customers curse me out because their TV no longer powers on after 5 months and I request that they pay a $110 repair fee."[13]

29.     As the self-identified company employee stated, Funai is well aware of the issues plaguing the Defective TVs.[14] Furthermore, the hundreds of comments from consumers illustrate

---

[11]     *Magnavox 32" Class (31.5" Measured) 720p LCD HDTV 32MF301B/F7 - Newegg.com*, http://www.newegg.com/Product/Product.aspx?Item=N82E16889259048 (last visited July 14, 2014); *see also see also Amazon.com: Customer Reviews: Magnavox 32MF301B/F7 32-Inch 720p LCD HDTV*, http://www.amazon.com/Magnavox-32MF301B-F7-32-Inch-720p/product-reviews/ B004UAG3HA/ref=dpx_acr_txt?showViewpoints=1 (last visited July 14, 2014) (showing 38 of 65 consumer reviews as having one star).

[12]     *32" Magnavox LCD 720p HDTV – Sam's Club*, http://www.samsclub.com/sams/32-magnavox-lcd-720p-hdtv/prod4400286.ip#tabRatings (last visited July 14, 2014).

[13]     *Amazon.com: Brit K's review of Emerson LC320EM2 32" LCD Television 720p 6...*, http://www.amazon.com/review/R3IFHIY88MSFBI/ (last visited July 14, 2014).

[14]     Tellingly, Defendant (or one of its subsidiaries) operates an online retail store on amazon.com where it sells only three types of television parts for its televisions. Two are parts that consumers commonly lose (remote controls and television stands) and—perhaps

the Defective TVs' propensity to fail. Instead of recalling the televisions and paying for the

replacement of its faulty PSB, Funai asks consumers to ship the Defective TVs to Funai so that it

might replace the PCBs at a cost of more than $100—typically 50% of the purchase price of the

televisions.

## V.      Plaintiff Oliver's Experience

30.      In May 2012, Plaintiff Oliver purchased an Emerson LC320EM2 32-inch LCD

Television from Walmart at a cost of $229.00. Before purchasing the television, Plaintiff saw the

energy guide label on her television similar to the energy guide in Figure 2. Specifically, Plaintiff

Oliver saw Funai's representations that she could use her TV for—at the very least—"5 hours"

per day for one year.

31.      In October 2013, Plaintiff Oliver's LC320EM2 TV failed. At the time her

television failed, Plaintiff Oliver had used her TV for approximately 390 hours. Thereafter,

Plaintiff Oliver called Defendant's customer support telephone number five times, informing

Defendant of her television's failure and seeking a replacement television. During those

telephone calls, Defendant acknowledged that the likely cause of the TV's failure was a faulty

PSB. However, Defendant refused to provide a replacement television or PSB without cost to

Plaintiff Oliver.

32.      After having her requests rebuffed by Defendant, Plaintiff Oliver attempted to

repair the television by purchasing several replacement parts for the PSB, totaling $18.76.

However, Plaintiff's TV failed to operate after the attempted repair. She then had her power

supply board sent to a television repair company. The repair company replaced more components

---

acknowledging the high-likelihood of failure—the only other part is a PSB, including the one for
the LC320EM2. *See Amazon.com At a Glance: Funai Service Corporation*, http://www.amazon.
com/gp/aag/main/?ie=UTF8&tag =f0of-20&linkCode=ur2&camp=1789&seller=
A2K12KFQNCLWJ8 (last visited July 14, 2014).

on the PSB and charged Plaintiff Oliver $54.46 plus $12.35 for shipping. Plaintiff's LC320EM2 television once again became operational after Plaintiff Oliver had the repaired PSB installed into the television.

33.     Had Plaintiff Oliver known that the LC320EM2 TV would completely fail after less than 400 hours of use (less than 1% of the 60,000 hours consumer LCD TVs are expected to last and less than 22% of the minimum 1,825 hours Funai represented its TVs would last), she would not have purchased the LC320EM2, or she would have paid less money for the TV.

34.     As it stands, Plaintiff Oliver suffered ascertainable loss totaling more than $85.57.

**VI.     Plaintiff Toms' Experience**

35.     In September 2012, Plaintiff Toms purchased a Magnavox 32MF301B 32-inch LCD TV from a local Target store at a cost of approximately $200.00. Before purchasing the television, Plaintiff saw the energy guide label on his television similar to the energy guide in Figure 2. Specifically, Plaintiff Toms saw Funai's representations that he could use his TV for—at the very least—"5 hours" per day for a year.

36.      In January 2014, Plaintiff Toms' 32MF301B TV failed. At the time his television failed, Plaintiff Toms had used his TV for approximately 190 hours. Thereafter, Plaintiff researched the likely cause of the television's failure and discovered that the PSB was faulty.

37.     Plaintiff Toms then attempted to repair the television by ordering a replacement PSB from an online retailer for $72.00. Once he received the replacement PSB, Plaintiff Toms installed it into his 32MF301B and his television once again became operational.

38.     Had Plaintiff Toms known that the 32MF301B TV would completely fail after less than 200 hours of use (less than 0.5% of the 60,000 hours consumer LCD TVs are expected to last and less than 11% of the minimum 1,825 hours Funai represented its TVs would last), he

would not have purchased the 32MF301B, or he would have paid less money for the TV.

39.     As it stands, Plaintiff Toms has suffered ascertainable loss totaling $72.00.

## CLASS ALLEGATIONS

40.     **Class Definition**: Plaintiffs Oliver and Toms bring this action pursuant to Fed. R.

Civ. P. 23(b)(2) and (3) on behalf of themselves and a class of similarly situated individuals,

defined as follows:

> All individuals and entities in the United States who (1) purchased an Emerson
> LC320EM2, a Magnavox 32MF301B 32-inch LCD TV, or any other TV
> manufactured by Funai using the same power supply boards as used in those two
> models, and (2) experienced a failure of the TV's power supply board.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents,

successors, predecessors, and any entity in which the Defendant or its parents have a controlling

interest and its current and former employees, officers, and directors, (2) the Judge or

Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's

immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released,

and (5) the legal representatives, successors, or assigns of any such excluded person.

41.     **Numerosity**: The exact number of Class members is unknown and is not

available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class

likely consists of thousands of individuals. Class members can be easily identified through

Defendant's records. Whether a consumer is a member of the Class is entirely objective.

42.     **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiffs and the other members of the Class, and those questions

predominate over any questions that may affect individual members of the Class. Common

questions for the Class include but are not limited to the following:

a)   Whether Funai intentionally misrepresented the useful life of the Defective TVs;

b)   Whether Funai intentionally manufactured the Defective TVs with faulty power supply boards;

c)   Whether Funai's conduct described herein constitutes a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*;

d)   Whether Funai's conduct described herein constitutes a violation of N.J. Stat. §§ 56, *et seq.*;

e)   Whether Funai's conduct described herein constitutes negligent misrepresentation;

f)   Whether Funai's conduct described herein constitutes intentional misrepresentation;

g)   Whether Funai's conduct described herein constitutes breach of express warranty;

h)   Whether Funai's conduct described herein constitutes breach of implied warranty of merchantability; and

i)   Whether Funai's conduct described herein resulted in unjust enrichment to Defendant.

43.   **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiffs and the Class.

44.   **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in

complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

45. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

46. **Superiority and Manageability**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents

far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

47. Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of the Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.***
**(On behalf of Plaintiffs and the Class)**

48. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

49. The Defective TVs are consumer products as defined in 15 U.S.C. § 2301(1) because they are tangible personal property distributed in commerce and are normally used for personal or household purposes.

50. Plaintiffs and members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

51. Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5) because it is in the business of making consumer products (*e.g.*, the Defective TVs) directly or indirectly available to consumers, and because it has issued written warranties to consumers.

52. Defendant issued written warranties as defined in 15 U.S.C. § 2301(6) in connection with the sale of the Defective TVs. Defendant's written warranties warranted that the televisions would operate for "5 hours use per day" for one year and that the Defective TVs were "manufactured" to "provide many years of useful life." (*See* Figures 1 and 2.)

53. Defendant breached the written warranties by designing and/or manufacturing the Defective TVs with defective PSBs. As a result, the Defective TVs have a propensity to fail in as little as five months or 190 hours of use.

54.     Plaintiffs and the Class have suffered harm as a proximate result of Defendant's breach, violations of law, and wrongful conduct in the form actual monetary damages because Plaintiffs and the Class purchased Defendant's televisions with a propensity to fail (and did fail) well before the operational time Defendant issued in its written warranties, paid money to repair the Defective TVs' PSBs and/or paid money to replace the PSBs and in all cases overpaid for TVs they would have either never purchased or paid less money for.

55.     As a result of Defendant's violations of Magnuson-Moss, Plaintiffs seek to recover actual damages, injunctive and declaratory relief, costs and attorneys' fees, and all other available remedies.

**SECOND CAUSE OF ACTION**
**Violation of N.J. Stat. §§ 56:8-1, *et seq.***
**(On behalf of Plaintiffs and the Class)**

56.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

57.     New Jersey Statute Title 56, *et seq.*, protects consumers against unconscionable, deceptive, or misleading business practices. The Defective TVs are "merchandise" within the meaning of N.J. Stat §§ 56:8-1, *et seq*. And Plaintiffs, members of the Class, and Funai are all "persons" within the meaning of N.J. Stat § 56:8-1.

58.     N.J. Stat §§ 56:8, *et seq.*, prohibits, *inter alia*, the use of any deception, misrepresentation, or the knowing concealment or omission of any material fact or unconscionable business practices in connection with the sale or advertisement of any merchandise.

59.     As alleged herein, Defendant engaged in and had, and continues to have direct knowledge of unconscionable or deceptive practices, misrepresentations, and the concealment or omission of material facts as defined by N.J. Stat § 56:8-2, *et seq.*, to the detriment of Plaintiffs and the Class by (1) falsely advertising that the Defective TVs would operate for "years," (2)

designing and/or manufacturing the Defective TVs with faulty PSBs, and (3) concealing its use of faulty PSBs in the design and distribution of the Defective TVs.

60.     The operational life of a television and the use of faulty components in a TV are material terms of any transaction for a television because they are likely to affect a consumer's choice of, or conduct regarding, whether to purchase a particular TV. Any deception related to the operational life of a television and the concealment of the use of faulty components in a TV is materially misleading.

61.     Defendant's misrepresentations regarding the expected operational life of a television is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

62.     Funai intended that Plaintiffs and the Class would rely on its material misrepresentations in that Plaintiffs' and the Class's reliance induced them to purchase the Defective TVs.

63.     In addition, Defendant omitted from its advertisements, marketing, and documentation that it manufactured the Defective TVs with PSBs with a propensity to fail well short of their expected lifespan.

64.     Moreover, the design and/or manufacture of the Defective TVs with faulty PSBs that have a propensity to fail in as little as five months or 190 hours is an unconscionable practice.

65.     Plaintiffs and the Class have suffered harm as a proximate result of Defendant's violations of law and wrongful conduct in the form of actual monetary damages because Plaintiffs and the Class purchased televisions that were designed and/or manufactured with a propensity to completely fail well before the advertised operational lifespan, paid to repair the

Defective TVs' PSBs, and/or purchased replacement PSBs.

66.     Plaintiffs seek an order requiring Defendant to: (1) immediately stop the unlawful practices stated in this Complaint; (2) make full restitution of all funds wrongfully obtained; (3) pay actual damages; (4) pay treble damages; and (5) pay interest, attorneys' fees, and costs pursuant to N.J. Stat. § 56:8-19.

**THIRD CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On behalf of Plaintiffs and the Class)**

67.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

68.     Through its advertisements, marketing, packaging, labels affixed directly to the TVs, and in its owner's manuals, Defendant Funai represented to Plaintiffs and the members of the Class that the Defective TVs had an expected operational life of "many years."

69.     Those representations were false, and at the time such false representations were made, Funai acted with negligence and carelessness in ascertaining the truth of the false statements. In addition, Defendant Funai knew or should have known that the actual expected operational life was materially different from the advertised expected operational life (*e.g.*, an operational life of as little as 5 months rather than at least one year). Funai did not have any reasonable ground for believing its representations to be true.

70.     Funai intended that Plaintiffs and members of the Class would rely on its misrepresentations about the operational life of the Defective TVs.

71.     Plaintiffs and Class members justifiably relied on Funai's misrepresentations by purchasing the Defective TVs and were unaware of the falsity of Funai's assertions at the time they were made. Funai was fully aware that Plaintiffs and Class Members relied on its misrepresentations.

72.     As a direct and proximate result of Funai's misrepresentations, Plaintiffs and

members of the Class suffered damages in the form of monies paid to purchase the Defective

TVs.

**FOURTH CAUSE OF ACTION**
**Intentional Misrepresentation**
**(On behalf of Plaintiffs and the Class)**

73.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

74.     Through its advertisements, marketing, packaging, labels affixed directly to the

TVs, and in its owner's manuals, Defendant Funai represented to Plaintiffs and the members of

the Class that the Defective TVs had an expected operational life of "many years."

75.     Those representations were false, and at the time such false representations were

made, Funai—as the designer and manufacturer of the Defective TVs—either knew or should

have known of their falsity. In addition, Defendant Funai knew or should have known that the

actual expected operational life was materially different from the advertised expected operational

life (*e.g.*, an operational life of as little as 5 months rather than at least one year). Funai did not

have any reasonable ground for believing its representations to be true.

76.     Funai intended that Plaintiffs and members of the Class would rely on its

misrepresentations about the operational life of the Defective TVs.

77.     Plaintiffs and Class members justifiably relied on Funai's misrepresentations by

purchasing the Defective TVs and were unaware of the falsity of Funai's assertions at the time

they were made. Funai was fully aware that Plaintiffs and Class Members relied on its

misrepresentations.

78.     As a direct and proximate result of Funai's misrepresentations, Plaintiffs and

members of the Class suffered damages in the form of monies paid to purchase the Defective

TVs.

## FIFTH CAUSE OF ACTION
### Breach of Express Warranty
### (On behalf of Plaintiffs and the Class)

79. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

80. Defendant's sale of its Defective TVs included express warranties created by Defendant's affirmations of fact, made through the marketing materials displayed on the Defective TVs, online, and in the Defective TVs' manuals.

81. Defendant's express warranties included affirmations of fact and promises that the Defective TVs would conform to the operational life represented on Defendant's TVs, websites, and in its manuals.

82. Specifically, Defendant's statements included affirmations of fact and promises that the Defective TVs would be able to operate for at least "5 hours use per day" for one year and that the Defective TVs were "manufactured" to "provide many years of useful life." (*See* Figures 1 and 2.) As such, Defendant expressly warranted that the Defective TVs would conform to such operational capabilities.

83. Defendant, under the New Jersey Uniform Commercial Code, N.J. Stat. § 12A:2-313, was obligated to deliver its TVs as advertised, promised, and/or described.

84. Defendant breached its express warranties because the Defective TVs did not— and could not—conform to the operational capabilities advertised on Defendant's TVs, websites, and in its TVs' manuals.

85. Defendant's failure to provide Plaintiffs and the Class members with televisions that were capable of meeting the advertised operational capability constitutes a breach of the express warranty described herein.

86. Plaintiffs and the members of the Class relied on Defendant's affirmations, promises, and descriptions when they purchased the Defective TVs. But for Defendant's

affirmations and promises, Plaintiffs and the Class would not have purchased the Defective TVs, or would have only agreed to purchase them at a lower price. As such, Defendant's breach of express warranties injured Plaintiffs and the Class because they purchased products that completely fail in as little as five months.

87.     Because of Defendant's breach, Plaintiffs and the Class are left with products that cannot perform their primary and ordinary purpose (*e.g.*, allowing purchasers to watch signals from broadcast TV, cable boxes, DVD players, and other video sources, or allowing purchasers to watch various video sources without distortion), and thus, have no value unless Plaintiffs and the Class pay to repair to the Defective TVs' PSBs or purchase replacement PSBs.

88.     Because the televisions Plaintiffs and the Class members received were not capable of operating as expressly warranted and represented by Defendant and were not fit for their ordinary purpose of use as a television, Plaintiffs and the members of the Class have been damaged by the entire purchase price of the televisions, by the cost to repair the Defective TVs' PSBs, and/or the cost to purchase replacement PSBs.

89.     Defendant's attempt to disclaim or limit the Defective TVs' express warranty with regards to consumers is unenforceable and unconscionable because Funai knowingly sold a defective product without conspicuously informing consumers about the defective PSBs within the written warranty or elsewhere.

90.     The time limits contained in Defendant's warranty period (*i.e.*, 90 days labor and one (1) year parts) are also unconscionable and grossly inadequate to protect Plaintiffs and the Class. Specifically, Plaintiffs and the members of the Class had no meaningful choice in determining the time limitations, and the terms of the express warranty favored Funai over members of the Class. Moreover, a gross disparity in bargaining power existed as between Funai

and Plaintiffs and individual members of the Class. On one side, Defendant, as the designer and manufacturer of the Defective TVs knew or should have known that the TVs contained faulty PSBs. And on the other side, Plaintiffs and members of the Class did not know and could not have known that the Defective TVs contained faulty PSBs because they lack the requisite technical expertise to independently inspect the TVs for defective PSBs. Additionally, Funai knew or should have known that the Defective TVs contained defective PSBs at the time of sale and that they would fail well before their useful lives (based on internal testing and sources currently unavailable to Plaintiffs and members of the Class at this time).

91.     Plaintiffs seek an order requiring Defendant to pay the maximum damages under the New Jersey Uniform Commercial Code.

## SIXTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (On behalf of Plaintiffs and the Class)

92.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

93.     As the designer, manufacturer, marketer, and distributor of the Defective TVs, Defendant impliedly warranted that the Defective TVs were fit for their intended and ordinary purpose. The intended and ordinary purpose of the Defective TVs was to operate as televisions (*e.g.*, allowing purchasers to watch signals from broadcast TV, cable boxes, DVD players, and other video sources, or allowing purchasers to watch various video sources without distortion).

94.     Defendant breached the warranty implied in the contract for the sale of the Defective TVs in that the Defective TVs were unfit for their intended and ordinary purpose because they contained defective PSBs. As a result, Plaintiffs and the Class members did not receive the goods as impliedly warranted by Defendant.

95.     Plaintiffs and the Class members purchased the Defective TVs for use as ordinary televisions relying on Defendant's skill and judgment and the implied warranty of fitness for that

22

purpose.

96.     The Defective TVs were not altered by Plaintiffs and the Class members and were defective when they left the exclusive control of Defendant.

97.     Defendant knew that the Defective TVs would be purchased and used by consumers, such as Plaintiffs and the Class, that do not have the requisite technical expertise to independently inspect the TVs for defective PSBs. Defendant defectively designed and/or manufactured the Defective TVs and they were unfit for their intended purpose (*e.g.*, allowing purchasers to watch signals from broadcast TV, cable boxes, DVD players, and other video sources, or allowing purchasers to watch various video sources without distortion or loss of picture altogether) and Plaintiffs and the Class members did not receive the goods as warranted.

98.     Defendant's attempt to disclaim or limit the Defective TVs' implied warranty of merchantability with regards to consumers is unenforceable and unconscionable because Funai knowingly sold a defective product without conspicuously informing consumers about the defective PSBs within the written warranty or elsewhere.

99.     The time limits contained in Defendant's warranty period (*i.e.*, 90 days labor and one (1) year parts) are also unconscionable and grossly inadequate to protect Plaintiffs and the Class. Specifically, Plaintiffs and the members of the Class had no meaningful choice in determining the time limitations, and the terms of the implied warranty of merchantability unreasonably favored Funai over members of the Class. Moreover, a gross disparity in bargaining power existed as between Funai and Plaintiffs and individual members of the Class. On one side, Defendant, as the designer and manufacturer of the Defective TVs knew or should have known that the TVs contained faulty PSBs. And on the other side, Plaintiffs and members of the Class did not know and could not have known that the Defective TVs contained faulty

PSBs because they lack the requisite technical expertise to independently inspect the TVs for defective PSBs. Additionally, Funai knew or should have known that the Defective TVs contained defective PSBs at the time of sale and that they would fail well before their useful lives (based on internal testing and sources currently unavailable to Plaintiffs and members of the Class at this time).

100.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the Class have been injured and harmed because the Defective TVs they purchased have stopped functioning, they have spent money repairing the Defective TVs' PSBs, and/or they have spent money purchasing replacement PSBs.

### SEVENTH CAUSE OF ACTION
#### Unjust Enrichment
#### (On behalf of Plaintiffs and the Class)

101.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

102.    Defendant knowingly profited from the sale of its Defective TVs to Plaintiffs and Class members.

103.    Plaintiffs and the Class have conferred a benefit upon Defendant. Defendant has received and retained money belonging to Plaintiffs and the Class as a result of its unlawful and deceptive conduct described herein.

104.    Defendant appreciates or has knowledge of the benefit conferred upon it by Plaintiffs and the Class.

105.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and the Class that it unjustly received as a result of its unlawful and deceptive conduct described herein.

106.    Plaintiffs and the Class have suffered financial loss as a direct result of Defendant's unlawful and deceptive conduct described herein.

107.     Plaintiffs, on their own behalf and on behalf of the Class, seek restitution of the proceeds Defendant received as a result of its unlawful and deceptive conduct described herein, as well as attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Norma Oliver and Matt Toms on behalf of themselves and the Class, respectfully request that this Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Norma Oliver and Matt Toms as representatives of the Class, and appointing their counsel as class counsel;

B.     Declaring that Defendant's actions, as set out above, violate 15 U.S.C. §§ 2310, *et seq.*, N.J. Stat §§ 56:8, *et seq.*, and constitute negligent misrepresentation, intentional misrepresentation, breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment;

C.     Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.     Awarding damages, including treble damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial;

E.     Awarding Plaintiffs and the Class restitution in an amount to be determined at trial;

F.     Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

G.     Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent

allowable; and

H.      Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

**NORMA OLIVER and MATT TOMS**,
individually and on behalf of all others similarly
situated,

Dated: July 17, 2014

By:  /s/ Stefan L. Coleman
        One of Plaintiffs' Attorneys

Stefan L. Coleman (#000382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427

Rafey S. Balabanian*
rbalabanian@edelson.com
Amir Missaghi*
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Steven L. Woodrow*
swoodrow@edelson.com
Megan Lindsey*
mlindsey@edelson.com
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4877
Fax: 303.446.9111

*Pro hac vice admission to be sought.

Attorneys for Plaintiffs and the Putative Class