Stefan L. Coleman (#000382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427
Fax: 888.498.8946

Steven L. Woodrow (Admitted *Pro Hac Vice*)
swoodrow@edelson.com
Megan Lindsey (Admitted *Pro Hac Vice*)
mlindsey@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiffs and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NORMA OLIVER and MATT TOMS, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> FUNAI CORPORATION, INC., a New Jersey corporation, FUNAI ELECTRIC CO., LTD., a Japanese corporation, TARGET CORPORATION, a Minnesota corporation, and WAL-MART STORES, INC., an Arkansas corporation, <br><br> *Defendant*. | Case No. 2:14-cv-04532-JLL-JAD <br><br> Hon. Jose L. Linares <br><br> Magistrate Judge Joseph A. Dickson |

**AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs Norma Oliver ("Oliver") and Matt Toms ("Toms") (together, "Plaintiffs") for

their Amended Class Action Complaint and Jury Demand ("Amended Complaint") allege that

1

Defendants Funai Corporation, Inc. and Funai Electric Co., Ltd. (collectively "Funai") intentionally and knowingly design and manufacture defective televisions that fail to operate well before the end of their reasonable useful life, shortly after the warranty expires, and that Defendants Target Corporation ("Target") and Wal-Mart Stores, Inc. ("Wal-Mart") unjustly retain the excess monies that Plaintiffs and other similarly situated customers paid to purchase the defective televisions. For their Amended Complaint, Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1.      Plaintiff Norma Oliver is a natural person and citizen of the State of Massachusetts and resides at 20 Elaine Way Acushnet, Massachusetts 02743.

2.      Plaintiff Matt Toms is a natural person and citizen of the State of Arizona and resides at 17669 W. Maya Way, Surprise, Arizona 85387.

3.      Defendant Funai Corporation, Inc. is incorporated in and exists under the laws of the State of New Jersey with its principal place of business located at 201 Route 17, Suite 903, Rutherford, New Jersey 07070. Funai does business throughout the United States and the State of New Jersey, including in this District. In accordance with an agreement with its parent company, Funai Electric Co. Ltd., Funai Corporation, Inc. is the exclusive authorized distributor of Funai brand electronic televisions, including under the Magnavox and Emerson labels, in the United States.

4.      Defendant Funai Electric Co. Ltd. is a Japanese company with its headquarters in Daitō, Oskaka, Japan that manufacturers and sells Funai brand electronic televisions, including Magnavox and Emerson. Funai Electric Co. Ltd. participates in, engages in, and avails itself of

2

the United States market and United States consumers through its subsidiary, Funai Corporation,

Inc. and agreements between the two entities.

5.     Defendant Target Corporation is organized under the laws of the State of

Minnesota with its principal place of business located at 1000 Nicollet Mall, Minneapolis,

Minnesota 55403.

6.     Defendant Wal-Mart Stores, Inc. is an Arkansas corporation incorporated in and

existing under the laws of the State of Arkansas with its principal place of business located at

702 SW 8th Street, Bentonville, Arkansas 72716.

### NATURE OF THE ACTION

7.     Defendant Funai markets and sells televisions under the Emerson and Magnavox

brand names. In an effort to increase its profits, Defendant manufactured its Emerson

LC320EM2 and Magnavox 32MF301B 32-inch televisions ("Defective TVs") with faulty

components.

8.     Judged by industry standards, consumers looking to buy televisions expect that all

modern TVs will work for nearly a decade under normal usage. This expectation has been

created in part due to those in the consumer television industry representing that modern TVs

will last for approximately 60,000 hours. Indeed, Funai itself represents in owners' and service

manuals that the LCD screen is manufactured to last for years.

9.     Unfortunately—and as consumer complaints corroborate—the Defective TVs

were designed and manufactured to have a lifespan far shorter than the average modern TV and

often fail shortly outside the stated warranties. The culprit: Funai's use of faulty power supply

boards[1] ("PSBs" or "power supply boards") that degrade more rapidly than industry standard

---

[1]     As explained more fully below, power supply boards are components that provide life to
the LCD and regulate the electricity that is needed for modern television displays.

3

PSBs (the "Defect"). Without repairing the Defect or replacing the defective PSBs—which can cost more than 50% of the Defective TVs' purchase price—the TVs are worth far less than the prices consumers like the Plaintiffs paid for them.

10.     Each of the Defendants knows about the Defect and profits as a result of the Defect, and each has taken steps to conceal the Defect from consumers and the general public by failing to disclose the Defect in their marketing materials or in any other way to customers. Instead the Defendants trump up and falsely inflate the supposed superior quality of the Defective TVs.

11.     Accordingly, this putative class action lawsuit seeks (i) to prevent Defendants from continuing to conceal the expected operational lifespan of the Defective TVs, including its interrelated component parts such as the liquid crystal display ("LCD") and power supply board ("PSB"), and from continuing to conceal this known Defect from its customers, and (ii) damages for those who purchased the Defective TVs in amounts reflective of the diminished value of their televisions, punitive damages, disgorgement of monies unlawfully withheld, restitution, and such additional relief as allowed by law.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

13.     This Court has personal jurisdiction over Defendants because they conduct business in this District. Further, Funai Corporation, Inc. is headquartered and registered to do business in this District, and the unlawful conduct alleged in the Complaint occurred in and

emanated from decisions made and policies implemented in this District.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Funai Corporation, Inc. resides in this District and the events underlying this action occurred here.

## FACTUAL BACKGROUND

### I.     A Brief Overview of Funai and its Emerson and Magnavox TVs

15.     Funai Corporation is a leading manufacturer of liquid crystal display ("LCD")[2] televisions. In addition to selling products under the "Funai" brand name, Defendant also manufactures and sells products under the "Emerson" and "Magnavox" brand names licensed from non-parties Emerson Radio Corporation and Philips North America Corporation, respectively.

16.     Among the Emerson and Magnavox products that Funai manufactures and sells are the Emerson LC320EM2 and Magnavox 32MF301B 32-inch LCD TVs that typically retail for $200 or more. Cosmetic differences aside, the Emerson LC320EM2 and Magnavox 32MF301B televisions are effectively the same. Importantly, both suffer from the same fatal Defect that causes them to completely fail long before any reasonable customer would expect when purchasing the TV.

### II.     Modern LCD TVs are Expected to Last for Tens of Thousands of Hours

17.     Over the past decade, LCDs have become the primary technology that powers consumer televisions, overtaking several other technologies (e.g. "plasma" and "CRT" TVs)[3]

---

[2]     An LCD is a display that uses an electronically controllable material (liquid crystals) in a way that can be manipulated to produce an image. WordNet® 3.0. Princeton University, *liquid crystal display*, dictionary.reference.com/browse/liquid+crystal+display (last visited July 14, 2014).

[3]     "Plasma" televisions utilized a competing technology that arguably produced a higher-quality picture but typically weighed more, cost more, and used more energy. "CRT," or cathode

along the way. A contributing factor to the widespread adoption of LCD TVs is the consumer expectation that their lifespan exceeds ten years with normal usage. This expectation was created by those in the television industry and was bolstered by Defendant Funai's active promotion and participation in that industry, its trade associations, lobbying efforts, advertising and other public communications.

18.    According to academic articles and consumer buying guides related to consumer televisions, LCD TVs have approximate lifespans of 60,000 hours. One study compared the lifespans of several television technologies and found that LCD televisions "last between 30,000 and 60,000 hours."[4] At a reasonable usage rate of eight hours per day, that represents a lifespan of over 10 years. Another article explains that for LCDs, the "technical lifespan is more than 60,000 hours which is equivalent to about 20 years at 8 hours a day."[5]

19.    Consumer TV buying guides also report the same lifespan for LCD TVs. Nonparty Ebay.com—one of the largest online retailers in the world—states that "LCD TVs are [] expected to operate for approximately 60,000 hours, or about 20 years."[6] Similarly, LCDTVBuyingGuide.com, a popular online resource for consumers, reiterates the "60,000 hours" figure, stating that "[i]f watching TV was your full-time job, and you did it 24 hours a

---

ray tube televisions, are the prototypical televisions that have fallen out of favor for their large physical size.

[4]    K. Opara Felix, I. Aririguzo Marvis, and C. Agbaraji Emmanuel, *Comparative Analysis and Performance Features of Plasma, LCD and CRT Screens: Operating Features, Merit and Recommendations*, 2 Academic Research International 2, 146 (2012).

[5]    Won Young Park, *TV Energy Consumption Trends and Energy-Efficiency Improvement Options,* Lawrence Berkeley National Laboratory: Lawrence Berkeley National Laboratory. LBNL Paper LBNL-5024E (2011).

[6]    Ebay Inc., *How Long Is the Typical Lifespan of an HDTV Compared to Standard-Definition TVs? | eBay*, http://www.ebay.com/gds/How-Long-Is-the-Typical-Lifespan-of-an-HDTV-Compared-to-Standard-Definition-TVs-/10000000177630568/g.html (last visited July 14, 2014).

day, it would take you almost 7 years to wear out your LCD display. With more normal viewing habits of, say, 8 hours per day, you can extend the lifespan of your TV by a decade or more (to about 20 years)!"[7]

### III.   Funai Knowingly Manufactured and Designed Its TVs to Fail Prematurely.

20.     Unfortunately for unwitting customers, the Defective TVs aren't manufactured to provide years of useful life at all. To the contrary, Funai knowingly designed and manufactured the Defective TVs with faulty components (i.e. the Defect) that fail well before any reasonable customer would ever expect them to.

21.     Modern LCD televisions, including the Defective TVs, are comprised of several components that all work together to provide the essential function of a television set (i.e. watching television programming), such as a display panel (i.e. the liquid crystal display and its controller) and a power supply board ("PSB"). (*See* Figure 1 below, showing Defendant's diagram of the Defective TVs with the PSB circled in red.)

22.     The power supply board regulates and routes electricity for the LCD panel. The PSB converts the standard 120-volt "AC" (i.e. alternating current) power found in residential homes to the "DC" (i.e. direct current) power that LCD panels require. Without a functioning PSB, the LCD screen and panel cannot operate and the televisions will stop displaying a picture and sound (without which a television is obviously rendered useless). By using faulty and defective PSBs that fail and need to be replaced, Funai ensures that its LCD is not manufactured or designed to provide many years of useful life.

---

[7]      *LCD TV Buying Guide: LCD TV Misconceptions: Six Common Myths About LCD Television Displays*, http://lcdtvbuyingguide.com/lcdtv/lcdtv-misconceptions.shtml (last visited July 14, 2014).



(**Figure 1.**)

23.     Indeed, Funai opted to manufacture its Defective TVs with low-quality (and likely

low-cost) PSBs in an apparent attempt to increase its profit margins. Over time the components

in Funai's low-quality PSBs degrade from normal, everyday use—unlike normal PSBs that last

for the entire 60,000-hour TV lifespan. The components' degradation then causes the PSBs to

lose their ability to adequately regulate and deliver proper voltage to the LCD panel and screen.

Accordingly, the PSBs' failure manifests itself with a loss of picture quality, such as the

introduction of "noise" (e.g. a grainy or erratic picture), and eventually the complete failure of

the TVs. In short, in light of the defective PSB, neither the LCD specifically nor the Defective

TVs as a whole are manufactured to provide many useful years of life.

24.     When the PSBs predictably fail, the customer has limited options. The PSBs last

beyond three months. As such, if the Defective TV fails in the stated warranty period (one year

for parts, ninety days for labor) the consumer must pay an undisclosed repair charge that is often

greater than $50. Outside the one year parts warranty, consumers must either purchase and install

an entire replacement PSB or, and much more difficult, identify which components on the PSB

failed and then replace them one by one. The cost to repair or replace the PSBs can range from

$50 to more than $190—often 50% of the cost of the Defective TVs themselves.

25.     Funai knows about the Defective TVs, including specifically the faulty PSBs and the effects on the LCD Panel and the ability of the TV to function, but Funai actively conceals the defect from consumers. On information and belief, Funai acquired its knowledge of the defective PSBs through sources not available to Plaintiffs and the members of the putative Class but that are peculiarly within the Defendants' knowledge, including but not limited to pre-release testing and associated and related testing data, early consumer complaints about the Defective TVs to Funai and its retailers, including co-Defendants Wal-Mart and Target, for selling the Defective TVs, testing conducted in response to those complaints, aggregate data (e.g. return rate data) from retailers, and from other internal sources.

26.     Defendant Funai also takes steps to avoid further inquiries or detection of the Defect by consumers prior to their purchases. Among other actions, Funai represents in its television services manuals that the "LCD Panel" will "provide many years of useful life," and similarly represents in its owners' manuals that the "LCD screen" will "provide many years of useful life."[8] Such statements and other marketing materials are designed to assuage concerns, dissuade further inquiries, and reassure customers that the TV has been built to last for years, consistent with industry standards. Further, consumers cannot open and inspect the televisions prior to purchase, and Defendant Funai does not disclose the Defect in *any* of its marketing materials, even though concealing the defect frustrates the consumer's ability to receive what they paid for.

27.     Funai, Target, and Wal-mart thus use an artifice or trick to prevent customers from learning about the Defect by misrepresenting the useful life of the televisions and otherwise

---

[8]     *See* Emerson Owner's Manual LC320EM2 (Dkt 8-5 at 30)("The LCD screen is manufactured to provide many years of useful life."); *see also* Magnavox 32MF301B (Dkt. 8-4 at 30 (same).

representing that the Defective TVs are of good quality in their advertising materials, among other actions.

28.     Like a house full of termites, the Defect here is material and basic to the sales transaction.

29.     Funai also doesn't disclose that it charges a repair fee of over $50 if the Defective TV fails within the one year parts warranty period but after the ninety day labor warranty period, which are both unconscionably short given Funai's knowledge of the Defect and the likelihood that the Defect will cause the LCD screen or panel to fail with minimal use.

**IV.     Consumers Are Upset and Have Limited Options.**

30.     The consistent failure of Funai's televisions has understandably upset consumers that were duped into buying the Defective TVs. As such, many frustrated consumers have turned to the Internet to voice their displeasure.

31.     One such consumer states that he "bought two of these TV's … and wouldn't you know it that both tv's had the invertor power boards [i.e. PSBs] go out on them with in two days of each other" and that he will have to "pay to have another board installed at $190 dollars each."[9] Another consumer states that she bought one of Funai's TVs for her son but "then one day it turns off and will not turn back on. I call customer service which told me to do everything I already did and then tells me that I have to take it to a repair man 50 miles away. I have two

---

[9]     *Amazon.com: Dave's review of Emerson LC320EM2 32" LCD Television 720p 6...*, http://www.amazon.com/review/R5YYO139DFYT6/ (last visited July 14, 2014); *Amazon.com: Customer Reviews: Emerson LC320EM2 32" LCD Television 720p 60 Hz*, http://www.amazon.com/Emerson-LC320EM2-LCD-Television-720p/product-reviews/B005RQMP5K/ (last visited July 14, 2014) (listing 44 of 66 consumer reviews for the LC320EM2 as having one out of five "stars" with many referring to the TV's propensity to fail); *Emerson 32" Class LCD 720p 60Hz HDTV, LC320EM2 Customer Ratings & Reviews - Top & Best Rated Products – Walmart*, http://reviews.walmart.com/1336/16775701/emerson-32-class-lcd-720p-60hz-hdtv-lc320em2-reviews/reviews.htm (last visited July 14, 2014) (showing 45 of 89 consumer reviews as having one star).

other OLDER tvs that I have had for over 10 years without any problems. Save your money unless you are willing to pay the same amount a year and half later to get it fixed."[10]

32.     Similarly, a consumer wrote that "I bought quite a few of these TV's because I felt that Magnavox was a quality, reliable company and the pricing was good. I had one of the sensors on the tv break within 2 weeks of installation, poor quality manufacturing, and Magnavox refused to consider repairing it because they said that I must have caused the damage. Since then I have had two of the TV's just go dead in the middle of watching programs."[11]

33.     Another commenter claims to have actually worked "for the Company that makes these TVs" and warns consumers, "DON'T BUY IT." She goes on to say, "If I had a penny for each time I had a customer call in and say that their LC320em2 TV no longer powers on after 5 months of use, I would be filthy rich . . . I'm tired of having customers curse me out because their TV no longer powers on after 5 months and I request that they pay a $110 repair fee."[12]

34.     As the self-identified company employee stated, Funai is well aware of the issues plaguing the Defective TVs.[13] Furthermore, the comments from consumers illustrate the Defective TVs' propensity to fail. Thus, instead of recalling the televisions and paying for the replacement of its faulty PSB, Funai asks consumers to ship the Defective TVs to Funai so that it

---

[10]    *Emerson 32" Class LCD 720p 60Hz HDTV, LC320EM2 Customer Ratings & Reviews - Top & Best Rated Products – Walmart*, http://reviews.walmart.com/1336/16775701/emerson-32-class-lcd-720p-60hz-hdtv-lc320em2-reviews/reviews.htm (last visited July 14, 2014).

[11]    *32" Magnavox LCD 720p HDTV – Sam's Club*, http://www.samsclub.com/sams/32-magnavox-lcd-720p-hdtv/prod4400286.ip#tabRatings (last visited July 14, 2014).

[12]    *Amazon.com: Brit K's review of Emerson LC320EM2 32" LCD Television 720p 6...*, http://www.amazon.com/review/R3IFHIY88MSFBI/ (last visited July 14, 2014).

[13]    Tellingly, Defendant (or one of its subsidiaries) operates an online retail store on amazon.com where it sells only three types of television parts for its televisions. Two are parts that consumers commonly lose (remote controls and television stands) and—perhaps acknowledging the high-likelihood of failure—the only other part is a PSB, including the one for the LC320EM2. *See Amazon.com At a Glance: Funai Service Corporation*, http://www.amazon.com/gp/aag/main/?ie=UTF8&tag =f0of-20&linkCode=ur2&camp=1789&seller= A2K12KFQNCLWJ8 (last visited July 14, 2014).

might replace the PCBs at a cost of more than $100—typically 50% of the purchase price of the televisions.

**V.     Plaintiff Oliver's Experience**

35.     In May 2012, Plaintiff Oliver purchased an Emerson LC320EM2 32-inch LCD Television from Wal-Mart in Florida at a cost of $229.00.

36.     In October 2013, shortly following the one-year express parts warranty, Plaintiff Oliver's LC320EM2 TV failed. At that time, Plaintiff Oliver had used her TV for approximately 390 hours. Thereafter, Plaintiff Oliver called Funai's customer support telephone number five times, informing Defendant of her television's failure and seeking a replacement television. During those telephone calls, Defendant Funai acknowledged that the likely cause of the TV's failure was a faulty PSB. However, Funai refused to provide a replacement television or PSB without cost to Plaintiff Oliver.

37.     After having her requests rebuffed by Funai, Plaintiff Oliver attempted to repair the television by purchasing several replacement parts for the PSB, totaling $18.76. However, Plaintiff's TV failed to operate after the attempted repair. She then had her PSB sent to a television repair company. The repair company replaced more components on the PSB and charged Plaintiff Oliver $54.46 plus $12.35 for shipping. Plaintiff's LCD and LC320EM2 television once again became operational after Plaintiff Oliver had the repaired PSB installed into the television.

38.     Had Plaintiff Oliver known that the LC320EM2 TV would completely fail following minimal use she would not have purchased the LC320EM2, or she would have paid less money for the TV.

39.     At present, Plaintiff Oliver suffered ascertainable loss totaling more than $85.57

as well as lost time.

## VI.  Plaintiff Toms' Experience

40.     In September 2012, Plaintiff Toms purchased a Magnavox 32MF301B 32-inch LCD TV from a Target store in Arizona at a cost of approximately $200.00.

41.      In January 2014, Plaintiff Toms' 32MF301B TV failed. At the time his television failed, Plaintiff Toms had used his TV for approximately 190 hours. Thereafter, Plaintiff researched the likely cause of the television's failure and discovered that the PSB was faulty.

42.     Plaintiff Toms then attempted to repair the television by ordering a replacement PSB from an online retailer for $72.00. Once he received the replacement PSB, Plaintiff Toms installed it into his 32MF301B and his LCD Panel and television once again became operational.

43.     Had Plaintiff Toms known that the 32MF301B TV would completely fail after minimal use he would not have purchased the 32MF301B, or he would have paid less money for the TV.

44.     As it stands, Plaintiff Toms has suffered ascertainable loss totaling $72.00.

## VII.  Wal-Mart, Target, and Other Retailers Know of the Defect But Help Funai Market the Defective TVs Anyway, Profiting at their Customer's Expense.

45.     Co-Defendant retailers Wal-Mart and Target both know about the Defect through consumer complaints and other channels, including potential communications with Defendant Funai.

46.     Rather than stop selling the Defective TVs, Wal-Mart and Target continue to sell them and profit from the sale. Further, Defendants Wal-Mart and Target market the Defective TVs on their respective company websites, touting the ostensible value of the Defective TVs without disclosing the known Defect.

47.     As such, Wal-Mart and Target have received money from the Plaintiffs and

putative class members and continue to improperly hold onto, retain, and enjoy the use and benefits of such amounts.

## CLASS ALLEGATIONS

48.     **Class Definition**: Plaintiffs Oliver and Toms bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of themselves and a class of similarly situated individuals, defined as follows:

> All individuals and entities in the United States who (1) purchased an Emerson LC320EM2 or a Magnavox 32MF301B 32-inch LCD TV and (2) experienced a failure of the TV's power supply board after 90 days.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

49.     **Numerosity**: The exact number of Class members is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals. Class members can be easily identified through Defendant's records.

50.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

a)      Whether Funai intentionally or knowingly misrepresented the useful life

14

of the Defective TVs;

b)      Whether Funai intentionally or knowingly manufactured the Defective

TVs with faulty PSBs;

c)      Whether Funai's representations as to the lifespan of its LCDs were false

given the defects in the PSBs used;

d)      Whether Funai knew about the defect and actively concealed the defect;

e)      Whether the defect was discoverable by Class Members;

f)      Whether the defect was material and basic to the transaction such that

Funai was obligated to have disclosed the defect;

g)      Whether Class Members would have paid less or not purchased the TV

had they known of the defect;

h)      Whether Funai's conduct described herein resulted in unjust enrichment to

Defendant Funai; and

i)      Whether Defendants Target and Wal-Mart knew about the defect and

whether they have been unjustly enriched by virtue of their sales of the Defective TVs

and whether they should be disgorged of such profits; and

j)      Whether Defendants have violated applicable state consumer protection

statutes.

51.     **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the

Class. Plaintiffs and the Class sustained damages as a result of Funai and the co-Defendants'

uniform wrongful conduct during transactions with Plaintiffs and the Class.

52.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and

protect the interests of the Class, and have retained counsel competent and experienced in

complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Class.

53.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

54.     **Superiority**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Defendants. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

55.    Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## FIRST CAUSE OF ACTION
### Common Law Fraudulent Concealment
### (On behalf of Plaintiffs and the Class)

56.    Plaintiffs incorporate the all other allegations as if fully set forth herein.

57.    Funai concealed known defects and, in an unconscionable manner, limited the warranty period despite knowing its product would likely fail shortly after the warranty period

58.    Further, Funai intended to hide information about the defective PSB and to mislead, avoid suspicion, or prevent further inquiry into the matter, which was undoubtedly material and basic to the transaction.

59.    To avoid suspicion and limit further inquiry, Funai actively misrepresents in its television Owner's Manuals that accompany every purchase that the "LCD screen," which consumers reasonably would read to mean the TVs themselves, were "manufactured to provide many years of useful life." The representation is false. By using faulty PSBs that failed to appropriately channel and distribute electricity to the LCDs, Funai did not actually manufacture the LCD to last for years. Likewise, statements in its Service Manuals for these models assures any service personnel who may review such materials when presented with a model for repair that the "LCD panel is manufactured to provide many years of useful life." Such statements were made to limit inquiry and play down any suspicion of latent defects.

60.    Further, Consumers cannot uncover the defective PSBs prior to purchase because

they do not have insider knowledge like Funai does regarding its testing and product issues. Likewise, customers were not permitted to inspect every component contained within the televisions they purchased. Funai further attempted to shift the burden of paying to repair the Defective TVs onto consumers by unconscionably limiting the labor warranty to 90 days, the parts warranty of 1 year, and charging undisclosed repair fees, none of which are disclosed prior to the consumer's purchase.

61.     Funai had a duty to disclose the defect. The defect was plainly material and basic to the transaction and caused the Defective TVs to not work or function as televisions.

62.     Rather than disclose the defective PSB and its effects on the LCD and TVs, Funai withheld such information from the public so as to increase its sales of the Defective TVs.

63.     Plaintiffs and the putative Class members would not have purchased the TVs, or would have paid significantly less, had the true circumstances—that the Defective TVs would fail shortly after the expiration of at least the labor warranty—been disclosed.

64.     Plaintiffs seek an order enjoining Funai, Wal-Mart, and Target from continuing to fail to disclose the Defect, disgorging the Defendants of all monies wrongfully withheld from the Plaintiffs, actual damages in the form of overpayments reflecting the reduced value of the TVs, punitive damages, plus costs and reasonable attorneys' fees and such other relief as this Court deems necessary and just.

**SECOND CAUSE OF ACTION**
**Violation of State Consumer Protection Statutes including the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1522 *et seq.*, The Florida Deceptive Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204 *et seq.*, and the New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*, (On behalf of Plaintiffs and the Class)**

65.     Plaintiffs incorporate all other allegations as if fully set forth herein.

***The Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1522.***

66.     The Arizona Consumer Fraud Act, provides that:

the use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or **concealment**, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

67.     As explained above, Defendants Funai and Target actively conceal a Defect that is basic to the transaction, and they do so with the intent that customers rely on the concealment and do not learn about the Defect prior to purchasing the Defective TVs. Plaintiff Toms and the putative Class members were misled or deceived into purchasing or overpaying for their Defective TVs.

68.     Plaintiff Toms seeks actual damages caused by his overpayment for the Defective TVs, repair costs, and all such other relief allowed under Arizona's Consumer Fraud Act including costs and reasonable attorneys' fees.

*The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. § 501.204 et seq.*

69.     The FDUTPA provides that "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Deceptive conduct is conduct that is likely to deceive consumers. Unfair conduct offends public policy, is immoral, or is unscrupulous.

70.     Plaintiffs, as the consumers, lacked an opportunity to become knowledgeable about the Defect prior to purchasing the Defective TVs. By contrast, Funai, Target, and Walmart had immediate access to information regarding the TVs, including access to any internal testing that was performed on the Defective TVs and consumer reports and complaints.

71.     Co-defendants Funai, Target, and Walmart took steps to conceal information regarding the Defect by refraining from including such information in any advertisements or manual materials, affirmatively representing that the Defective TVs were of good quality, and otherwise refraining from informing customers regarding the short useful life of the Defective TVs.

72.     Plaintiffs' and the Class members' purchase of the Defective TVs was on a take-it-or-leave-it basis and Plaintiffs and the Class members had no opportunity to negotiate the terms of the purchase.

73.     Funai's manufacture and sale of the Defective TVs, and Wal-Mart's knowing sale of the Defective TVs, are unconscionable, deceptive, and unfair. Such practices constitute fraudulent concealment that is likely to deceive consumers. Knowingly manufacturing and selling Defective TVs, shortening the warranty period, assessing hidden and undisclosed repair charges, and concealing the Defect are all immoral, unfair, and unscrupulous business practices.

74.     Consumers like Plaintiff Oliver were injured as a result of such practices and suffered damages in the form of overpayments for the Defective TVs and out of pocket repair costs.

75.     Plaintiff seeks injunctive and declaratory relief putting a stop to Defendants' manufacture and sale of the Defective TVs and failure to disclose the Defect as well as actual damages reflecting the diminished value of their TVs and such other relief allowed under the FDUTPA including costs and reasonable attorneys' fees.

***New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, et seq.***

76.     New Jersey Statute Title 56, *et seq.*, protects consumers against unconscionable, deceptive, or misleading business practices. The Defective TVs are "merchandise" within the

meaning of N.J. Stat §§ 56:8-1, *et seq*. And Plaintiffs, members of the Class, and Funai are all "persons" within the meaning of N.J. Stat § 56:8-1.

77.     N.J. Stat §§ 56:8, *et seq*., prohibits, *inter alia*, the use of any deception, misrepresentation, or the knowing concealment or omission of any material fact or unconscionable business practices in connection with the sale or advertisement of any merchandise.

78.     As alleged herein, Defendant engaged in and had, and continues to have, direct knowledge of unconscionable or deceptive practices, misrepresentations, and the concealment or omission of material facts as defined by N.J. Stat § 56:8-2, *et seq*., to the detriment of Plaintiffs and the Class by (1) designing and/or manufacturing the Defective TVs with faulty PSBs, (2) concealing its use of faulty PSBs in the design and distribution of the Defective TVs, and (3) dissuading further inquiry by, *inter alia*, falsely representing that the Defective TVs would operate for "years", imposing an unconscionably short express warranty period, and failing to disclose hidden repair costs.

79.     The operational life of a television and the use of faulty components in a TV are material and basic terms of any transaction for a television because they are likely to affect a consumer's choice of, or conduct regarding, whether to purchase a particular TV. Any deception related to the operational life of a television and the concealment of the use of faulty components in a TV is materially misleading.

80.     Defendant's misrepresentations regarding the expected operational life of a television is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

81.     Funai intended that Plaintiffs and the Class would rely on its material

misrepresentations in that Plaintiffs' and the Class's reliance induced them to purchase the Defective TVs.

82.     In addition, Defendant omitted from its advertisements, marketing, and documentation that it manufactured the Defective TVs with PSBs with a propensity to fail well short of their expected lifespan.

83.     Moreover, the design and/or manufacture of the Defective TVs with faulty PSBs that have a propensity to fail in as little as five months or 190 hours is an unconscionable practice.

84.     Plaintiffs and the Class have suffered harm as a proximate result of Defendant's violations of law and wrongful conduct in the form of actual monetary damages because Plaintiffs and the Class purchased televisions that were designed and/or manufactured with a propensity to completely fail well before the advertised operational lifespan, paid to repair the Defective TVs' PSBs, and/or purchased replacement PSBs.

85.     Plaintiffs seek an order requiring Defendant to: (1) immediately stop the unlawful practices stated in this Complaint; (2) make full restitution of all funds wrongfully obtained; (3) pay actual damages; (4) pay treble damages; and (5) pay interest, attorneys' fees, and costs pursuant to N.J. Stat. § 56:8-19.

86.     Plaintiffs anticipate including all similarly situated consumer protection statutes of similarly situated states following appropriate discovery.

## THIRD CAUSE OF ACTION
### Restitution/Unjust Enrichment Against Funai
### (On behalf of Plaintiffs and the Class)

87.     Plaintiffs incorporate all non-contract allegations as if fully set forth herein.

88.     Defendant knowingly profited from the sale of its Defective TVs to Plaintiffs and Class members.

89.     Plaintiffs and the Class have conferred a benefit upon Defendant Funai. Defendant has received and retained money belonging to Plaintiffs and the Class as a result of its unlawful and deceptive conduct described herein.

90.     Defendant appreciates or has knowledge of the benefit conferred upon it by Plaintiffs and the Class. Even if payments weren't direct, Defendant has been enriched by putting a defective product into the stream of commerce at the Plaintiffs' expense such that restitution should be ordered.

91.     Under principles of equity and good conscience, Defendant Funai should not be permitted to retain the money belonging to Plaintiffs and the Class that it unjustly received as a result of its unlawful and deceptive conduct described herein.

92.     Plaintiffs and the Class have suffered financial loss as a direct result of Defendant's unlawful and deceptive conduct described herein.

93.     Plaintiffs, on their own behalf and on behalf of the Class, seek disgorgement and restitution of the proceeds Defendant received as a result of its unlawful and deceptive conduct described herein, as well as attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Restitution/Unjust Enrichment Against Defendants Target and Wal-Mart**
**(On behalf of Plaintiffs and the Class)**

94.     Plaintiffs incorporate all non-contract allegations as if fully set forth herein.

95.     Defendants, as retailers with knowledge of the Defect through consumer complaints and, on information and belief, communications with Defendant Funai, knowingly profited from the sale of its Defective TVs to Plaintiffs and Class members.

96.     Plaintiffs and the Class have conferred direct benefits upon Defendants Wal-Mart and Target. Defendants have received and retained money belonging to Plaintiffs and the Class

as a result of their unlawful and deceptive conduct described herein.

97.     Defendants appreciate or have knowledge of the benefit conferred upon them by Plaintiffs and the Class. The payments for the Defective TVs were made directly to Wal-Mart and Target and these Defendants have been enriched by knowingly selling Defective TVs such that restitution should be ordered.

98.     Under principles of equity and good conscience, Defendants Wal-Mart and Target should not be permitted to retain the money belonging to Plaintiffs and the Class that they have unjustly received as a result of their unlawful and deceptive conduct described herein.

99.     Plaintiffs and the Class have suffered financial loss as a direct result of Defendants' unlawful and deceptive conduct described herein.

100.    Plaintiffs, on their own behalf and on behalf of the Class, seek disgorgement and restitution of the proceeds Defendants have received as a result of their unlawful and deceptive conduct described herein, as well as attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**Aiding and Abetting Against Target and Wal-Mart**
**(On behalf of Plaintiffs and the Class)**

101.    Plaintiffs incorporate all other allegations as if fully set forth herein.

102.    Defendants Target and Wal-Mart know about the Defect and provide substantial assistance to Defendant Funai to keep the Defect concealed from customers.

103.    Defendants Target and Wal-Mart receive complaints and repair requests for the Defective TVs but simply deflect such inquiries or forward them to Funai.

104.    Defendants' own marketing materials touts the supposed excellent and superior quality of the Defective TVs even though these Defendants know that such statements are not true and that that Defective TVs actually suffer from the Defect. As an actual and proximate

result of Target and Wal-Mart's provision of assistance to Funai, Defendants have profited at the Plaintiffs' and Class members' expense.

105.    Plaintiffs seek an order enjoining Wal-Mart and Target from continuing to aid and abet Funai in its concealment of the Defect, disgorging the Defendants' of all monies wrongfully withheld from the Plaintiffs, actual damages in the form of overpayments reflecting the reduced value of the TVs, punitive damages, plus costs and reasonable attorneys' fees and such other relief as this Court deems necessary and just.

## SIXTH CAUSE OF ACTION
**Civil Conspiracy Against All Defendants**
**(On behalf of Plaintiffs and the Class)**

106.    Plaintiffs incorporate all other allegations as if fully set forth herein.

107.    Defendants have arranged and agreed among themselves to distribute, market, and sell the Defective TVs knowing that the Defective TVs suffer from the Defect.

108.    Each Defendant has profited from the arrangement at the Plaintiffs' and putative Class members' respective expenses.

109.    The Defendants have used unlawful means to achieve a lawful end, or lawful means to achieve an unlawful end.

110.    As a result of the damages suffered due to the Defendants' arrangement, Plaintiffs seek an order enjoining Wal-Mart and Target from continuing to aid and abet Funai in its concealment of the Defect, disgorging the Defendants of all monies wrongfully withheld from the Plaintiffs, actual damages in the form of overpayments reflecting the reduced value of the TVs, punitive damages, plus costs and reasonable attorneys' fees and such other relief as this Court deems necessary and just.

## SEVENTH CAUSE OF ACTION
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**Against Wal-Mart and Target**
**(On behalf of Plaintiffs and the Class)**

111.    Plaintiffs incorporate all other allegations as if fully set forth herein except for those seeking relief under theories barred upon proof of the existence of a valid contract.

112.    Plaintiffs' purchases of their Defective TVs from Wal-Mart and Target constituted binding sales agreements. Implied within these agreements, and in every contract, is a covenant of good faith and fair dealing that prohibits Defendants from acting a way to deprive customers the benefits of their respective bargains.

113.    Defendants Target and Wal-Mart acted to frustrate Plaintiffs' ability to receive the benefits of their bargains by knowing of the Defect, concealing the Defect, and marketing the Defective TVs as being of excellent or superior quality. Defendants further refused to honor supposedly stated warranties.

114.    As an actual and proximate result of Defendants' breaches of the implied covenant, Plaintiffs and the Class Members have suffered damages.

115.    Plaintiffs seek all monies wrongfully withheld from the Plaintiffs, actual damages in the form of overpayments reflecting the reduced value of the TVs, punitive damages, plus costs and reasonable attorneys' fees and such other relief as this Court deems necessary and just.

**EIGHTH CAUSE OF ACTION**
**Violation of Magnusson Moss Warranty Act**
**15 U.S.C. §§ 2301, *et seq.***
**(Against All Defendants)**

116.    Plaintiffs incorporate the prior allegations as if set forth fully herein.

117.    Funai expressly warranted that the LCD would provide many years of useful life. The statement in its service manuals that the "LCD Panel" and in its Owner's Manuals that the "LCD screen" were manufactured to provide "many years of useful life" are express warranties

that would lead a reasonable consumer to believe that the TV as a whole would provide "many years of useful life." To the extent that Funai attempted to limit the warranty for parts to one year or labor to ninety days, those time limits are inconsistent with the warranty that the TV was manufactured to provide "many years of useful life." Further, any ambiguities would be construed against the drafter, which is Funai.

118.    Enforcement of the one-year or ninety-day limitation would be unconscionable. Procedurally, consumers are not presented with the warranty until after their purchase and the terms are presented in a form manual on a take it or leave it basis without any room for negotiation. In substance, the attempted limited warranty is grossly one-sided and unfair, as Funai knows (but customers don't) that the Defective TVs will fail outside the ninety-day labor period, and potentially outside the one-year parts period.

119.    Further, Funai doesn't disclose the replacement charges it levies for such repairs, which can exceed $100. In breach of the express warranty that the TV was made to provide "many years of useful life" Defendant Funai manufactured the TV so that it failed after minimal use.

120.    As an actual and proximate result of this breach Plaintiffs and the putative Class members have suffered actual damages in the amounts they overpaid for their Defective TVs and seek such damages and all other amounts and types of relief allowed by law.

**NINTH CAUSE OF ACTION**
**Breach of Express Warranty Against Target**
**(On behalf of Plaintiff Toms and the Class)**

121.    Plaintiff incorporates the allegations of Count VIII as if set forth fully herein.

122.    Funai expressly warranted that the TV would last for years. The statement in its manuals that the "LCD Panel" and "LCD screen" were manufactured to provide "many years of useful life" are express warranties that would lead a reasonable consumer to believe that the TV

as a whole would provide "many years of useful life."

123.    To the extent that Funai attempted to limit the warranty for parts to one year or labor to ninety days, those time limits are inconsistent with the warranty that the TV was manufactured to provide "many years of useful life." Further, any ambiguities would be construed against the drafter, which is Funai.

124.    Enforcement of the one-year or ninety-day limitation would be unconscionable. Procedurally, consumers are not presented with the warranty until after their purchase and the terms are presented in a form manual on a take it or leave it basis without any room for negotiation. In substance, the attempted limited warranty is grossly one-sided and unfair, as Funai knows (but customers don't) that the Defective TVs will fail outside the ninety-day labor period, and potentially outside the one-year parts period.

125.    Further, Funai doesn't disclose the replacement charges it levies on such repairs, which can exceed $100. In breach of the express warranty that the TV was made to provide "many years of useful life," Defendant Funai manufactured the TV so that it failed after minimal use.

126.    By selling the TV to Toms, Target assumed the duties of the warranty and became obligated under the warranty. Toms is in privity with Target.

127.    As an actual and proximate result of this breach Plaintiffs and the putative Class members have suffered actual damages in the amounts they overpaid for their Defective TVs and seek such damages and all other amounts and types of relief allowed by law.

**TENTH CAUSE OF ACTION**
**Breach of Express Warranty against Wal-Mart and Funai**
**(On behalf of Plaintiff Oliver and the Class)**

128.    Plaintiff incorporates the allegations of Counts VIII and IX as if set forth fully

28

herein.

129.    Funai expressly warranted that the TV would last for years. The statement in its manuals that the "LCD Panel" and "LCD screen" were manufactured to provide "many years of useful life" are express warranties that would lead a reasonable consumer to believe that the TV as a whole would provide "many years of useful life."

130.    To the extent that Funai attempted to limit the warranty for parts to one year or labor to ninety days, those time limits are inconsistent with the warranty that the TV was manufactured to provide "many years of useful life." Further, any ambiguities would be construed against the drafter, which is Funai.

131.    Enforcement of the one-year or ninety-day limitation would be unconscionable. Procedurally, consumers are not presented with the warranty until after their purchase and the terms are presented in a form manual on a take it or leave it basis without any room for negotiation. In substance, the attempted limited warranty is grossly one-sided and unfair, as Funai knows (but customers don't) that the Defective TVs will fail outside the ninety-day labor period, and potentially outside the one-year parts period. Further, Funai doesn't disclose the replacement charges it levies on such repairs, which can exceed $100.

132.    In breach of the express warranty that the TV was made to provide "many years of useful life" Defendant Funai manufactured the TV so that it failed after minimal use, usually outside at least the labor warranty and often following the one-year parts warranty.

133.    Additionally, by selling the TV to Plaintiff Oliver and knowing of the warranty, Wal-Mart assumed the duties of the warranty and became obligated under the warranty. Wal-Mart breached the warranty by knowingly selling the Defective TVs.

134.    As an actual and proximate result of this breach by Wal-Mart and Funai, Plaintiffs

and the putative Class members have suffered actual damages in the amounts they overpaid for

their Defective TVs and seek such damages and all other amounts and types of relief allowed by

law.

**ELEVENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Against Funai**
**(On behalf of Plaintiff Oliver and the Class)**

135.    Plaintiff incorporates all other allegations as if set forth fully herein.

136.    As the designer, manufacturer, marketer, and distributor of the Defective TVs,

Defendant Funai impliedly warranted that the Defective TVs were fit for their intended and

ordinary purpose. The intended and ordinary purpose of the Defective TVs was to operate as

televisions by allowing purchasers to watch signals from broadcast TV, cable boxes, DVD

players, and other video sources, or allowing purchasers to watch various video sources without

distortion.

137.    Defendant breached the warranty implied in the contract for the sale of the

Defective TVs. The Defective TVs were unfit for their intended and ordinary purpose because

they contained defective PSBs. As a result, Plaintiffs and the Class members did not receive the

goods as impliedly warranted by Defendant.

138.    Plaintiffs and the Class members purchased the Defective TVs for use as ordinary

televisions relying on Defendant's skill and judgment and the implied warranty of fitness for that

purpose.

139.    The Defective TVs were not altered by Plaintiffs and the Class members and were

defective when they left the control of Defendant.

140.    In short, Defendants placed the Defective TVs into the stream of commerce

knowing they contained and suffered from the Defect.

141.    Defendant knew that the Defective TVs would be purchased and used by consumers, such as Plaintiffs and the Class, who do not have the requisite technical expertise to independently inspect the TVs for defective PSBs. Defendant defectively designed and/or manufactured the Defective TVs, which were unfit for their intended purpose (allowing purchasers to watch signals from broadcast TV, cable boxes, DVD players, and other video sources, or allowing purchasers to watch various video sources without distortion or loss of picture altogether) and Plaintiffs and the Class members did not receive the goods as warranted.

142.    Defendant's attempt to disclaim or limit the Defective TVs' implied warranty of merchantability with regards to consumers is unenforceable and unconscionable because Funai knowingly sold a defective product without conspicuously informing consumers about the defective PSBs within the written warranty or elsewhere. Defendant also took steps to misdirect customers through the express warranty language that the LCDs were "manufactured to provide many years of useful life."

143.    The time limits contained in Defendant's warranty period (ninety days for labor and one year for parts) are also unconscionable and grossly inadequate to protect Plaintiffs and the Class. Plaintiffs and the Class members had no meaningful choice in determining the time limitations, and the terms of the implied warranty of merchantability unreasonably favored Funai over members of the Class. Moreover, a gross disparity in bargaining power existed between Funai and Plaintiffs and individual Class members. Defendant, as the designer and manufacturer of the Defective TVs, knew or should have known that the TVs contained faulty PSBs. By contrast, Plaintiffs and Class members did not know and could not have known that the Defective TVs contained faulty PSBs because they lack the requisite technical expertise to independently inspect the TVs for defective PSBs. Further, the time limits are inconsistent with

31

other express warranty language indicating that the LCD was manufactured to provide "many years of useful life."

144.    Additionally, Funai knew or should have known that the Defective TVs contained defective PSBs at the time of sale and that they would fail well before their useful lives (based on internal testing and sources currently unavailable to Plaintiffs and members of the Class at this time).

145.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the Class have been injured and harmed because the Defective TVs they purchased have stopped functioning, they have spent money repairing the Defective TVs' PSBs, and/or they have spent money purchasing replacement PSBs.

146.    As an actual and proximate result of this breach by Wal-Mart and Funai, Plaintiffs and the putative Class members have suffered actual damages in the amounts they overpaid for their Defective TVs and seek such damages and all other amounts and types of relief allowed by law.

**TWELFTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Against Target and Wal-Mart**
**(On behalf of Plaintiffs and the Class)**

147.    Plaintiffs incorporate all other allegations as if set forth fully herein.

148.    In States where privity is required for breach of implied warranty of merchantability claims, like Arizona, the retailer Defendants Wal-Mart and Target assume the implied warranties offered by the manufacturer.

149.    As Sellers of the Defective TVs who knew about and profited from the sales, Defendants' impliedly warranted that the Defective TVs were fit for their intended and ordinary purpose. The intended and ordinary purpose of the Defective TVs was to operate as televisions

(e.g. allowing purchasers to watch TV signals from broadcast TV, cable boxes, DVD players, and other video sources, or allowing purchasers to watch various video sources without distortion).

150.   Defendants breached the warranty implied in the contract for the sale of the Defective TVs in that the Defective TVs were unfit for their intended and ordinary purpose because they contained defective PSBs and Defendant retailers knew about and worked with Funai to downplay and conceal from customers. As a result, Plaintiffs and the Class members did not receive the goods as impliedly warranted by Defendants.

151.   Plaintiffs and the Class members purchased the Defective TVs for use as ordinary televisions relying on Defendants' skill and judgment and the implied warranty of fitness for that purpose.

152.   The Defective TVs were not altered by Plaintiffs and the Class members and were defective when they left the control of Defendants.

153.   Defendants knew that the Defective TVs would be purchased and used by consumers, such as Plaintiffs and the Class, that do not have the requisite technical expertise to independently inspect the TVs for defective PSBs. The TVs as manufactured and designed were unfit for their intended purpose (allowing purchasers to watch signals from broadcast TV, cable boxes, DVD players, and other video sources, or allowing purchasers to watch various video sources without distortion or loss of picture altogether) and Plaintiffs and the Class members did not receive the goods as warranted.

154.   Defendant's attempt to disclaim or limit the Defective TVs' implied warranty of merchantability with regards to consumers is unenforceable and unconscionable because Funai knowingly sold a defective product without conspicuously informing consumers about the

defective PSBs within the written warranty or elsewhere.

155.    The time limits contained in Defendant's warranty period (ninety days for labor and one year for parts) are also unconscionable and grossly inadequate to protect Plaintiffs and the Class. Plaintiffs and the members of the Class had no meaningful choice in determining the time limitations, and the terms of the implied warranty of merchantability unreasonably favored Funai over members of the Class. Moreover, a gross disparity in bargaining power existed as between Funai and Plaintiffs and individual members of the Class. Defendant, as the designer and manufacturer of the Defective TVs knew or should have known that the TVs contained faulty PSBs. By contrast, Plaintiffs and members of the Class did not know and could not have known that the Defective TVs contained faulty PSBs because they lack the requisite technical expertise to independently inspect the TVs for defective PSBs. Additionally, Funai knew or should have known that the Defective TVs contained defective PSBs at the time of sale and that they would fail well before their useful lives (based on internal testing and sources currently unavailable to Plaintiffs and members of the Class at this time).

156.    Defendants further made statements extolling the supposedly alluring characteristics of the Defective TVs when they knew they were of low quality. Defendants further provided materials assuring consumers, using language that a reasonable consumer would construe to apply to the entire TV set, that the TVs were "manufactured to provide many years of useful life."

157.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the Class have been injured and harmed because the Defective TVs they purchased have stopped functioning, they have spent money repairing the Defective TVs' PSBs, and/or they have spent money purchasing replacement PSBs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Norma Oliver and Matt Toms on behalf of themselves and the Class, respectfully request that this Court enter an order:

A.      Certifying this case as a class action on behalf of the Class defined above, and over any Class or subclasses as set forth following appropriate discovery, appointing Norma Oliver and Matt Toms as representatives of the Class, and appointing their counsel as class counsel;

B.      Declaring that Defendant's actions, as set out above violate 15 U.S.C. §§ 2310, *et* the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1522 *et seq.*, the Florida Deceptive Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204 *et seq.*, and the New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*, and any comparable statutes, and constitute fraudulent concealment, breach of the implied covenant of good faith and fair dealing, breach of express warranties, breach of implied warranties of merchantability, and that the Defendants have been unjustly enriched such that they should be ordered to pay restitution;

C.      Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein and disgorging them of their unlawful profits and monies retained;

D.      Awarding actual damages in amounts reflective of Plaintiffs' repair and replacement costs, lost time, shipping, and the reduced value of the Defective TVs compared with what the TVs should have cost, and statutory damages, including punitive and exemplary damages where available, to Plaintiffs and the Class in an amount to be determined at trial;

E.      Awarding Plaintiffs and the Class restitution in an amount to be determined at

trial;

      F.      Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

      G.      Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

      H.      Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

      Plaintiffs demand a trial by jury of all issues so triable.

          Respectfully submitted,

          **NORMA OLIVER and MATT TOMS**,
          individually and on behalf of all others similarly
          situated,

Dated: October 20, 2014          By: /s/ Stefan Coleman
                One of Plaintiffs' Attorneys

          Stefan L. Coleman (#000382009)
          law@stefancoleman.com
          LAW OFFICES OF STEFAN COLEMAN, LLC
          1072 Madison Avenue, Suite 1
          Lakewood, New Jersey 08701
          Tel: 877.333.9427
          Fax: 888.498.8946

          Steven L. Woodrow (Admitted *Pro Hac Vice*)
          swoodrow@edelson.com
          Megan Lindsey (Admitted *Pro Hac Vice*)
          mlindsey@edelson.com
          EDELSON PC
          350 North LaSalle Street, Suite 1300
          Chicago, Illinois 60654
          Tel: 312.589.6370
          Fax: 312.589.6378
          *Attorneys for Plaintiffs and the Putative Class*