Stefan L. Coleman (#000382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Eve-Lynn J. Rapp (Admitted *Pro Hac Vice*)
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
*Attorneys for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORMA OLIVER and MATT TOMS, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> FUNAI CORPORATION, INC., a New Jersey corporation, FUNAI ELECTRIC CO., LTD., a Japanese corporation, <br><br> *Defendants*. | Case No. 2:14-cv-04532-JLL-JAD <br><br> Hon. Jose L. Linares <br><br> Magistrate Judge Joseph A. Dickson |

## SECOND AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Norma Oliver ("Oliver") and Matt Toms ("Toms") (together, "Plaintiffs") for

their Second Amended Class Action Complaint and Jury Demand (the "SAC") allege that

Defendants Funai Corporation, Inc. ("Funai Corp.") and Funai Electric Co., Ltd. ("Funai

Electric," and collectively "Funai" or "Defendants")[1] intentionally and knowingly design and manufacture defective televisions that fail to operate well before the end of their reasonable useful life, shortly after the warranty expires. For their SAC, Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1.     Plaintiff Norma Oliver is a natural person and citizen of the State of Massachusetts and resides at 20 Elaine Way Acushnet, Massachusetts 02743.

2.     Plaintiff Matt Toms is a natural person and citizen of the State of Arizona and resides at 8203 West Oraibi Drive, No. 2086, Peoria, Arizona 85382.

3.     Defendant Funai Corp.is incorporated in and exists under the laws of the State of New Jersey with its principal place of business located at 201 Route 17, Suite 903, Rutherford, New Jersey 07070. Funai does business throughout the United States and the State of New Jersey, including in this District. In accordance with an agreement with its parent company, Funai Electric, Funai Corp. is the exclusive authorized distributor of Funai brand electronic televisions, including under the Magnavox and Emerson labels, in the United States.

4.     Defendant Funai Electric is a Japanese company with its headquarters in Daitō, Osaka, Japan that manufacturers and sells Funai brand electronic televisions, including Magnavox and Emerson. Funai Electric participates in, engages in, and avails itself of the United States market and United States consumers through its subsidiary, Funai Corp. and agreements between the two entities.

---

[1]     Where referring to "Defendants" collectively, Plaintiffs allege the same facts against Funai Corp. and Funai Electric unless otherwise specified. As such, every reference to "Defendants" shall be construed to include all Defendants jointly and acting in concert, unless a particular Defendant is identified by name.

## NATURE OF THE ACTION

5.      Defendants Funai market and sell televisions under the Emerson and Magnavox brand names. In an effort to increase their profits, Defendants manufactured their Emerson LC320EM2 and Magnavox 32MF301B 32-inch televisions ("Defective TVs") with faulty components.

6.      Judged by industry standards, consumers looking to buy televisions expect that all modern TVs will work for nearly a decade under normal usage. This expectation has been created in part due to those in the consumer television industry representing that modern TVs will last for approximately 60,000 hours. Indeed, Funai themselves represent in owners' and service manuals that the LCD screen is manufactured to last for years.

7.      Unfortunately—and as consumer complaints corroborate—the Defective TVs were designed and manufactured to have a lifespan far shorter than the average modern TV and often fail shortly outside the stated warranties. The culprit: Funai's use of faulty power supply boards[2] ("PSBs" or "power supply boards") that degrade more rapidly than industry standard PSBs (the "Defect"). Without repairing the Defect or replacing the defective PSBs—which can cost more than 50% of the Defective TVs' purchase price—the TVs are worth far less than the prices consumers like the Plaintiffs paid for them.

8.      Both Defendants know about the Defect and profit as a result of the Defect, and both have taken steps to conceal the Defect from consumers and the general public by failing to disclose the Defect in their marketing materials or in any other way to customers. Instead, Defendants trump up and falsely inflate the supposed superior quality of the Defective TVs.

9.      Accordingly, this putative class action lawsuit seeks (i) to prevent Defendants

_____

[2]      As explained more fully below, power supply boards are components that provide life to the LCD and regulate the electricity that is needed for modern television displays.

from continuing to conceal this known Defect (and the TVs' shortened operational lifespan) from their customers, and (ii) damages for those who purchased the Defective TVs in amounts reflective of the diminished value of their televisions, punitive damages, disgorgement of monies unlawfully withheld, restitution, and such additional relief as allowed by law.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

11.     This Court has personal jurisdiction over Defendants because they conduct business in this District. Further, Funai Corp. is headquartered and registered to do business in this District, and the unlawful conduct alleged in the Complaint occurred in and emanated from decisions made and policies implemented in this District.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Funai Corporation, Inc. resides in this District and the events underlying this action occurred here.

## FACTUAL BACKGROUND

## I.     A Brief Overview of Funai and their Emerson and Magnavox TVs

13.     Funai Electric is a global and leading manufacturer of liquid crystal display ("LCD")[3] televisions. In the United States, Funai Electric distributes its manufactured LCD TVs through and entrusts the televisions' marketing to its subsidiary Funai Corp.

---

[3]     An LCD is a display that uses an electronically controllable material (liquid crystals) in a way that can be manipulated to produce an image. WordNet® 3.0. Princeton University, *liquid crystal display*, dictionary.reference.com/browse/liquid+crystal+display (last visited July 14, 2014).

14. In addition to selling products under the "Funai" brand name, Defendants also manufacture and sell products under the "Emerson" and "Magnavox" brand names licensed from non-parties Emerson Radio Corporation and Philips North America Corporation, respectively.

15. Among the Emerson and Magnavox branded televisions that are jointly licensed by Defendants, manufactured by Funai Electric, and exclusively distributed and marketed by Funai Corp. are the Emerson LC320EM2 and Magnavox 32MF301B 32-inch LCD TVs that typically retail for $200 or more. Cosmetic differences aside, the Emerson LC320EM2 and Magnavox 32MF301B televisions are effectively the same. Importantly, both suffer from the same fatal Defect that causes them to completely fail long before any reasonable customer would expect when purchasing the TV.

16. For the Defective TVs, Defendants jointly use the registered trademarks. As Defendants' www.magnavox.com website states, "Magnavox is a registered trademark of Philips Electronics North America Corporation and is used by Funai Electric [] and Funai Corp. [] under license from Philips Electronics North America Corporation."[4]

17. Similarly, Defendants' www.emersonaudiovideo.com website states that "EMERSON and the G-CLEF logo is a registered trademark of Emerson Radio Corp. in the U.S. and Canada, used under license by Funai Electric [] and Funai Corp. []"[5]

18. Beyond the joint use of the Emerson and Magnavox brand names, Defendants have an exclusivity agreement whereby Funai Corp. exclusively markets and distributes the Magnavox and Emerson LCD TVs manufactured by Funai Electric. Indeed, on Funai Electric's Funai.jp website, it states that "Funai Electric offers products under seven of its own and

---

[4] *Magnavox, Smart, Very Smart. Magnavox Home*, http://www.magnavox.com (last visited July 15, 2015).

[5] *The highest quality LED LCD HDTV at a most affordable price | Emerson HOME*, http://www.emersonaudiovideo.com/ (last visited July 15, 2015).

licensed [sic] brands, which differ by sales area, regional alliances and product characteristics," and notes that the Emerson and Magnavox brands are limited to a "Sales Area" of "North America."[6]

19.     Funai Corp., on its website Funai.us, likewise states that "Funai Corp. [] is the North American sales and marketing company for consumer electronic products manufactured by our parent company, Funai Electric [] of Japan."[7]

20.     Moreover, the comingling of control between Funai Electric and Funai Corporation in the manufacturing and sale of the Defective TVs is of such significance that Defendants themselves conflate their roles. For instance, within the manuals that accompany each Defective TV, Defendants interchangeably use "Funai Corporation, Inc.," "Funai Electric Co, Ltd.," and "Funai":

© 2011 Funai Electric Co., Ltd.
All rights reserved. No part of this manual may be reproduced, copied, transmitted, disseminated, transcribed, downloaded or stored in any storage medium, in any form or for any purpose without the express prior written consent of Funai. Furthermore, any unauthorized commercial distribution of this manual or any revision hereto is strictly prohibited.

Information in this document is subject to change without notice. Funai reserves the right to change the content herein without the obligation to notify any person or organization of such changes.

(**Figure 1**, showing that the manual is copyright of Funai Electric, Ltd., but that "Funai" reserves other rights.)

MAGNAVOX is a registered trademark of Philips Electronics North America Corporation and is used by Funai Electric Co. Ltd. and Funai Corporation, Inc. under license from Philips Electronics North America.

(**Figure 2**, showing statement in manual that Magnavox is used by both Funai Corp. and Funai Electric.)[8]

---

[6]     *Products | FUNAI ELECTRIC CO., LTD.*, http://www.funai.jp/en/products/index.html#license_note (last visited July 15, 2015).

[7]     *Funai Corporation*, http://www.funai.us/ (last visited July 15, 2015).

[8]     The terms contained in the Emerson Manual are identical, but refer to the Emerson, rather than Magnavox, trade name.

| Trade Name: MAGNAVOX | Responsible Party: FUNAI CORPORATION, Inc. |
| --- | --- |

(**Figure 3**, showing Funai Corp. listed as the "responsible party" within the manual.)

21.    And, as the public social networking profiles of the following individuals demonstrate, the relationship between Funai Corp. and Funai Electric is of such an interdependent (and united) nature that Defendants' own employees conflate the two entities:

**Sales and Marketing Manager**
Funai Corporation
October 2013 – Present (1 year 10 months)

**Manager, Office Solution Sales**
Funai Electric
2005 – Present (10 years) | Osaka

Oversea sales of office equipment

(**Figure 4**, showing Linkedin.com profile of an individual currently employed by *both* Defendants.)[9]

manager at Funai Corporation
Osaka, Japan | Consumer Electronics

Current    Funai electric co ltd Japan

(**Figure 5**, same.)[10]

---

[9]    *Shinya Tashiro | LinkedIn*, https://www.linkedin.com/profile/view?id=257071655 (last visited July 16, 2015).

[10]    *takehiro onomatsu | LinkedIn*, https://www.linkedin.com/pub/takehiro-onomatsu/2a/b2/974?trk=pub-pbmap (last visited July 16, 2015).

7

**Exclusive Sales and Business Development Consultant**
Funai Corp. Inc .
August 2013 – Present (2 years) I Greater Minneapolis-St. Paul Area

Responsibilities include developing new business to business ( B2B ) customers across multiple industries that will compliment Funai's current balanced channel management and great retail customers in the US. with a priority to both drive sales of the current product lines and focus development efforts to identify customer needs and create new solutions in consumer electronics leveraging the strength of Funai's worldwide foot print. Funai Electric Co. LTD has outstanding Research & Development, Engineering, and a worldwide footprint geared for volume production. As a leading technology company, the company holds a leading market share in North America for LCD-TV, Printers, and DVD. The company is a strong OEM business partner and offers products in the US under the brand names Funai, Emerson, Magnavox, and Philips.

(**Figure 6**, conflating Funai Corporation and Funai Electric.)[11]

## II.   Modern LCD TVs are Expected to Last for Tens of Thousands of Hours

22.      Over the past decade, LCDs have become the primary technology that powers consumer televisions, overtaking several other technologies (e.g. "plasma" and "CRT" TVs)[12] along the way. A contributing factor to the widespread adoption of LCD TVs is the consumer expectation that their lifespan exceeds ten years with normal usage. This expectation was created by those in the television industry and was bolstered by Defendants' active promotion and participation in that industry, its trade associations, lobbying efforts, advertising and other public communications.

23.      According to academic articles and consumer buying guides related to consumer televisions, LCD TVs have approximate lifespans of 60,000 hours. One study compared the lifespans of several television technologies and found that LCD televisions "last between 30,000 and 60,000 hours."[13] At a reasonable usage rate of eight hours per day, that represents a lifespan

---

[11]      *Todd Larson | LinkedIn*, https://www.linkedin.com/profile/view?id=36564545 (last visited July 16, 2015).

[12]      "Plasma" televisions utilized a competing technology that arguably produced a higher-quality picture but typically weighed more, cost more, and used more energy. "CRT," or cathode ray tube televisions, are the prototypical televisions that have fallen out of favor for their large physical size.

[13]      K. Opara Felix, I. Aririguzo Marvis, and C. Agbaraji Emmanuel, *Comparative Analysis and Performance Features of Plasma, LCD and CRT Screens: Operating Features, Merit and Recommendations*, 2 Academic Research International 2, 146 (2012).

of over 10 years. Another article explains that for LCDs, the "technical lifespan is more than 60,000 hours which is equivalent to about 20 years at 8 hours a day."[14]

24.     Consumer TV buying guides also report the same lifespan for LCD TVs. Nonparty Ebay.com—one of the largest online retailers in the world—states that "LCD TVs are [] expected to operate for approximately 60,000 hours, or about 20 years."[15] Similarly, LCDTVBuyingGuide.com, a popular online resource for consumers, reiterates the "60,000 hours" figure, stating that "[i]f watching TV was your full-time job, and you did it 24 hours a day, it would take you almost 7 years to wear out your LCD display. With more normal viewing habits of, say, 8 hours per day, you can extend the lifespan of your TV by a decade or more (to about 20 years)!"[16]

### III.   Funai Knowingly Manufactured and Designed Their TVs to Fail Prematurely.

25.     Unfortunately for unwitting customers, the Defective TVs aren't manufactured to provide years of useful life at all. To the contrary, Funai knowingly designed, manufactured, distributed, and sold the Defective TVs with faulty components (i.e. the Defect) that fail well before any reasonable customer would ever expect them to.

26.     Modern LCD televisions, including the Defective TVs, are comprised of several components that all work together to provide the essential function of a television set (i.e.

---

[14]     Won Young Park, *TV Energy Consumption Trends and Energy-Efficiency Improvement Options,* Lawrence Berkeley National Laboratory: Lawrence Berkeley National Laboratory. LBNL Paper LBNL-5024E (2011).

[15]     Ebay Inc., *How Long Is the Typical Lifespan of an HDTV Compared to Standard-Definition TVs? | eBay*, http://www.ebay.com/gds/How-Long-Is-the-Typical-Lifespan-of-an-HDTV-Compared-to-Standard-Definition-TVs-/10000000177630568/g.html (last visited July 14, 2014).

[16]     *LCD TV Buying Guide: LCD TV Misconceptions: Six Common Myths About LCD Television Displays*, http://lcdtvbuyingguide.com/lcdtv/lcdtv-misconceptions.shtml (last visited July 14, 2014).

watching television programming), such as a display panel (i.e. the liquid crystal display and its controller) and a power supply board ("PSB"). (*See* **Figure 7** below, showing Defendants' diagram of the Defective TVs with the PSB circled in red.)

27.     The power supply board regulates and routes electricity for the LCD panel. The PSB converts the standard 120-volt "AC" (i.e. alternating current) power found in residential homes to the "DC" (i.e. direct current) power that LCD panels require. Without a functioning PSB, the LCD screen and panel cannot operate and the televisions will stop displaying a picture and sound (without which a television is obviously rendered useless). By using faulty and defective PSBs that fail and need to be replaced, Funai ensures that their LCD is not manufactured or designed to provide many years of useful life.



(**Figure 7.**)

28.     Indeed, Funai opted to manufacture their Defective TVs with low-quality (and likely low-cost) PSBs in an apparent attempt to increase its profit margins. Over time the components in Funai's low-quality PSBs degrade from normal, everyday use—unlike normal PSBs that last for the entire 60,000-hour TV lifespan. The components' degradation then causes the PSBs to lose their ability to adequately regulate and deliver proper voltage to the LCD panel

and screen. Accordingly, the PSBs' failure manifests itself with a loss of picture quality, such as the introduction of "noise" (e.g. a grainy or erratic picture), and eventually the complete failure of the TVs. In short, in light of the defective PSB, neither the LCD specifically nor the Defective TVs as a whole are manufactured to provide many useful years of life.

29.     When the PSBs predictably fail, the customer has limited options, especially when the PSBs invariably last just beyond the three-month long warranty period for labor. As such, if the Defective TV fails in the stated warranty period (one year for parts, ninety days for labor) the consumer must pay an undisclosed repair charge that is often greater than $50. Outside the one year parts warranty, consumers must either purchase and install an entire replacement PSB or, and much more difficult, identify which components on the PSB failed and then replace them one by one. The cost to repair or replace the PSBs can range from $50 to more than $190—often 50% of the cost of the Defective TVs themselves.

30.     Defendants know about the Defective TVs, including specifically the faulty PSBs and the effects on the LCD Panel and the ability of the TV to function, but Funai actively conceal the defect from consumers. On information and belief, Funai acquired their knowledge of the defective PSBs through sources not available to Plaintiffs and the members of the putative Class but that are peculiarly within the Defendants' knowledge, including but not limited to pre-release testing and associated and related testing data, early consumer complaints about the Defective TVs to Funai and their retailers, such as companies like Wal-Mart and Target, for selling the Defective TVs, testing conducted in response to those complaints, aggregate data (e.g. return rate data) from retailers, and from other internal sources.

31.     Defendants also take steps to avoid further inquiries or detection of the Defect by consumers prior to their purchases. Among other actions, Defendants represent in the Defective

TVs' service manuals that the "LCD Panel" will "provide many years of useful life," and similarly represents in the Defective TVs' owners' manuals that the "LCD screen" will "provide many years of useful life."[17] Such statements and other marketing materials are designed to assuage concerns, dissuade further inquiries, and reassure customers that the TV has been built to last for years, consistent with industry standards. Further, consumers cannot open and inspect the televisions prior to purchase, and Defendants do not disclose the Defect in *any* of their marketing materials, even though concealing the defect frustrates the consumer's ability to receive what they paid for.

32.     Funai thus use an artifice or trick to prevent customers from learning about the Defect by misrepresenting the useful life of the televisions and otherwise representing that the Defective TVs are of good quality in their advertising materials, among other actions.

33.     Defendants do not disclose the Defect here even though the existence of the Defect is material and basic to the sales transaction.

34.     Funai also don't disclose that they charge a repair fee of over $50 if the Defective TV fails within the one year parts warranty period but after the ninety day labor warranty period, which are both unconscionably short given Funai's knowledge of the Defect and the likelihood that the Defect will cause the LCD screen or panel to fail with minimal use.

## IV.     Consumers Are Upset and Have Limited Options.

35.     The consistent failure of Funai's televisions has understandably upset consumers that were duped into buying the Defective TVs. As such, many frustrated consumers have turned to the Internet to voice their displeasure.

---

[17]     *See* Emerson Owner's Manual LC320EM2 (Dkt 8-5 at 30)("The LCD screen is manufactured to provide many years of useful life."); *see also* Magnavox 32MF301B (Dkt. 8-4 at 30 (same). As noted above, Defendants use their names interchangeably within the Emerson and Magnavox manuals, and each take responsibility for the terms contained therein. (*See supra* Figures 1–3.)

36.     One such consumer states that he "bought two of these TV's … and wouldn't you know it that both tv's had the invertor power boards [i.e. PSBs] go out on them with in two days of each other" and that he will have to "pay to have another board installed at $190 dollars each."[18] Another consumer states that she bought one of Funai's TVs for her son but "then one day it turns off and will not turn back on. I call customer service which told me to do everything I already did and then tells me that I have to take it to a repair man 50 miles away. I have two other OLDER tvs that I have had for over 10 years without any problems. Save your money unless you are willing to pay the same amount a year and half later to get it fixed."[19]

37.     Similarly, a consumer wrote that "I bought quite a few of these TV's because I felt that Magnavox was a quality, reliable company and the pricing was good. I had one of the sensors on the tv break within 2 weeks of installation, poor quality manufacturing, and Magnavox refused to consider repairing it because they said that I must have caused the damage. Since then I have had two of the TV's just go dead in the middle of watching programs."[20]

38.     Another commenter claims to have actually worked "for the Company that

---

[18]     *Amazon.com: Dave's review of Emerson LC320EM2 32" LCD Television 720p 6...*, http://www.amazon.com/review/R5YYO139DFYT6/ (last visited July 14, 2014); *Amazon.com: Customer Reviews: Emerson LC320EM2 32" LCD Television 720p 60 Hz*, http://www.amazon.com/Emerson-LC320EM2-LCD-Television-720p/product-reviews/B005RQMP5K/ (posted December 1, 2012, last visited July 19, 2015) (listing 44 of 66 consumer reviews for the LC320EM2 as having one out of five "stars" with many referring to the TV's propensity to fail); *Emerson 32" Class LCD 720p 60Hz HDTV, LC320EM2 Customer Ratings & Reviews - Top & Best Rated Products – Walmart*, http://reviews.walmart.com/1336/16775701/emerson-32-class-lcd-720p-60hz-hdtv-lc320em2-reviews/reviews.htm (postings from July 17, 2011 to October 26, 2013, last visited July 19, 2015) (showing 45 of 89 consumer reviews as having one star).

[19]     *Emerson 32" Class LCD 720p 60Hz HDTV, LC320EM2 Customer Ratings & Reviews - Top & Best Rated Products – Walmart*, http://reviews.walmart.com/1336/16775701/emerson-32-class-lcd-720p-60hz-hdtv-lc320em2-reviews/reviews.htm (posted October 30, 2011, last visited July 19, 2015).

[20]     *32" Magnavox LCD 720p HDTV – Sam's Club*, http://www.samsclub.com/sams/32-magnavox-lcd-720p-hdtv/prod4400286.ip#tabRatings (posted April 25, 2013, last visited July 19, 2015).

makes these TVs" and warns consumers, "DON'T BUY IT." She goes on to say, "[i]f I had a

penny for each time I had a customer call in and say that their LC320em2 TV no longer powers

on after 5 months of use, I would be filthy rich . . . I'm tired of having customers curse me out

because their TV no longer powers on after 5 months and I request that they pay a $110 repair

fee."[21]

      39.     As the self-identified company employee stated, Funai is well aware of the issues

plaguing the Defective TVs.[22] And, as evidenced by the dates on which consumers' complaints

were posted, Defendants knew of the Defective TVs' propensity to fail before Plaintiffs

purchased their TVs. For example, complaints regarding the Emerson LC320EM2 TV date back

to 2011 and continue beyond:



---

[21]    *Amazon.com: Brit K's review of Emerson LC320EM2 32" LCD Television 720p 6...*,
http://www.amazon.com/review/R3IFHIY88MSFBI/ (posted May 14, 2013, last visited July 19,
2015).

[22]    Tellingly, Defendants (or one of their subsidiaries) operate an online retail store on
amazon.com where they sell only three types of television parts for their televisions. Two are
parts that consumers commonly lose (remote controls and television stands) and—perhaps
acknowledging the high-likelihood of failure—the only other part is a PSB, including the one for
the LC320EM2. *See Amazon.com At a Glance: Funai Service Corporation*, http://www.amazon.
com/gp/aag/main/?ie=UTF8&tag =f0of-20&linkCode=ur2&camp=1789&seller=
A2K12KFQNCLWJ8 (last visited July 14, 2014).





(**Figure 8.**)[23]

40.     And, as the examples below show, consumer complaints regarding the Magnavox 32MF301B TV also date back many years:



---

[23]     *Emerson 32" Class LCD 720p 60Hz HDTV, LC320EM2 Customer Ratings & Reviews - Top & Best Rated Products – Walmart, supra.*



(**Figure 9.**)[24]

41.      Despite knowing of the Defective TVs' propensity to fail, Defendants never

disclose the existence of the defect to consumers, knowing that consumers would rely on that

material fact (i.e., consumers would not purchase TVs with a disclosed propensity to fail). And,

instead of recalling the televisions and paying for the replacement of their faulty PSB, Funai asks

consumers to ship the Defective TVs to Funai so that they might replace the PSBs at a cost of

more than $100—typically 50% of the purchase price of the televisions.

**V.      Plaintiff Oliver's Experience**

42.      In May 2012, Plaintiff Oliver purchased an Emerson LC320EM2 32-inch LCD

Television from Wal-Mart in Florida at a cost of $229.00.

43.      In October 2013, shortly following the one-year express parts warranty, Plaintiff

Oliver's LC320EM2 TV failed. At that time, Plaintiff Oliver had used her TV for approximately

390 hours. Thereafter, Plaintiff Oliver called Funai's customer support telephone number five

times, informing Defendants of her television's failure and seeking a replacement television.

During those telephone calls, Defendants acknowledged that the likely cause of the TV's failure

was a faulty PSB. However, Funai refused to provide a replacement television or PSB without

cost to Plaintiff Oliver.

44.      After having her requests rebuffed by Funai, Plaintiff Oliver attempted to repair

the television by purchasing several replacement parts for the PSB, totaling $18.76. However,

---

[24]      *Amazon.com: Customer Reviews: Magnavox 32MF301B/F7 32-Inch 720p LCD HDTV*,
http://www.amazon.com/Magnavox-32MF301B-F7-32-Inch-720p/product-
reviews/B004UAG3HA/ (last visited July 15, 2015).

Plaintiff's TV failed to operate after the attempted repair. She then had her PSB sent to a television repair company. The repair company replaced more components on the PSB and charged Plaintiff Oliver $54.46 plus $12.35 for shipping. Plaintiff's LCD and LC320EM2 television once again became operational after Plaintiff Oliver had the repaired PSB installed into the television.

45. Had Plaintiff Oliver known that the LC320EM2 TV would completely fail following minimal use she would not have purchased the LC320EM2, or she would have paid less money for the TV.

46. At present, Plaintiff Oliver suffered ascertainable loss totaling more than $85.57 as well as lost time.

**VI.     Plaintiff Toms' Experience**

47. In September 2012, Plaintiff Toms purchased a Magnavox 32MF301B 32-inch LCD TV from a Target store in Arizona at a cost of approximately $200.00.

48. In January 2014, Plaintiff Toms' 32MF301B TV failed. At the time his television failed, Plaintiff Toms had used his TV for approximately 190 hours. Thereafter, Plaintiff researched the likely cause of the television's failure and discovered that the PSB was faulty.

49. Plaintiff Toms then attempted to repair the television by ordering a replacement PSB from an online retailer for $72.00. Once he received the replacement PSB, Plaintiff Toms installed it into his 32MF301B and his LCD Panel and television once again became operational.

50. Had Plaintiff Toms known that the 32MF301B TV would completely fail after minimal use he would not have purchased the 32MF301B, or he would have paid less money for the TV.

51.        As it stands, Plaintiff Toms has suffered ascertainable loss totaling $72.00.

**CLASS ALLEGATIONS**

52.        **Class Definition**: Plaintiffs Oliver and Toms bring this action pursuant to Fed.

R. Civ. P. 23(b)(2) and (3) on behalf of themselves and a class of similarly situated individuals,

defined as follows:

> **Class:** All individuals and entities in the United States who (1) purchased an Emerson
> LC320EM2 or a Magnavox 32MF301B 32-inch LCD TV and (2) experienced a failure of
> the TV's power supply board after 90 days.

> Additionally, Plaintiff Toms bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3)

on behalf of himself and a class of similarly situated individuals, defined as follows:

> **Arizona Subclass:** All class members who are residents of Arizona.

Excluded from the Class and Subclass (collectively referred to as the "Class", unless otherwise

indicated) are (1) Defendants, Defendants' agents, subsidiaries, parents, successors,

predecessors, and any entity in which the Defendants or their parents have a controlling interest

and their current and former employees, officers, and directors, (2) the Judge or Magistrate

Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family,

(3) persons who execute and file a timely request for exclusion, (4) Plaintiffs' and Defendants'

counsel, and (5) persons whose claims in this matter have been finally adjudicated on the merits

or otherwise released, and (6) the legal representatives, successors, or assigns of any such

excluded person.

53.        **Numerosity**: The exact number of Class members is unknown and is not

available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class

and Subclass likely consists of thousands of individuals. Class members can be easily identified

through Defendants' records.

54.        **Commonality and Predominance**: There are many questions of law and fact

18

common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

      a)     Whether Funai intentionally or knowingly failed to inform Plaintiffs and the Class and Subclass about the useful life of the Defective TVs;

      b)     Whether Funai intentionally or knowingly designed, manufactured, and sold the Defective TVs with faulty PSBs;

      c)     Whether Funai's representations as to the lifespan of their LCDs were false given the defects in the PSBs used;

      d)     Whether Funai knew about the defect and actively concealed the defect;

      e)     Whether the defect was discoverable by Class and Subclass Members;

      f)     Whether the defect was material and basic to the transaction such that Funai were obligated to have disclosed the defect;

      g)     Whether Class and Subclass Members would have paid less or not purchased the TV had they known of the defect; and,

      h)     Whether Defendants violated the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1522 *et seq.*.

55.    **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Class and Subclass. Plaintiffs and the Class and Subclass sustained damages as a result of Funai and the Defendants' uniform wrongful conduct during transactions with Plaintiffs and the Class and Subclass.

56.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass, and have retained counsel competent and

experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class and Subclass, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclass and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Class and Subclass.

57.    **Policies Generally Applicable to the Class and Subclass**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class and Subclass as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass, and making final injunctive relief appropriate with respect to the Class and Subclass as a whole. Defendants' policies challenged herein apply and affect members of the Class and Subclass uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the whole of the Class and Subclass, not on facts or law applicable only to Plaintiffs.

58.    **Superiority**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual members of the Class and Subclass are likely to have been relatively small compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class and Subclass to obtain effective relief from Defendants. Even if members of the Class and Subclass themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require

duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

59.     Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Common Law Fraudulent Concealment**
**(On behalf of Plaintiffs and the Class)**

60.     Plaintiffs incorporate all other allegations as if fully set forth herein.

61.     Funai concealed known defects and, in an unconscionable manner, limited the warranty period despite knowing their Defective TVs would likely fail shortly after the warranty period.

62.     Both Defendants knew of the Defect before Plaintiffs purchased their TVs. As described in Section I, above, Defendants operate closely and, as a result, likely share internal documents with each other. And, as described in Section IV above, consumer complaints submitted to Defendants' retail partners demonstrate that Defendants both knew of the Defect before Plaintiffs purchased their TVs.

63.     More specifically, Funai Electric, knew of the Defect because as the manufacturer of the Defective TVs, it has superior knowledge of the components and their quality used in manufacturing the TVs and was on notice of the existence of the Defect from its testing, diagnostics, maintenance, repair, and/or replacement records and from the repair or replacement requests from members of the Class that it received (from Funai Corporation or otherwise) or reviewed.

64.     Likewise, Defendant Funai Corporation was on notice of the Defect from the complaints and/or repair or replacement requests from members of the Class that it received or reviewed, and from testing, diagnostic, maintenance, repair, and/or replacement records it invariably had access to or received from Funai Electric.

65.     Funai intended to hide information about the defective PSB and to mislead, avoid suspicion, or prevent further inquiry into the matter, which was undoubtedly material and basic to the transaction.

66.     To avoid suspicion and limit further inquiry, Funai actively misrepresent in their television owner's manuals that accompany every purchase that the "LCD screen," which consumers reasonably would read to mean the TVs themselves, were "manufactured to provide many years of useful life." The representation is false. By using faulty PSBs that failed to appropriately channel and distribute electricity to the LCDs, Funai did not actually design and/or manufacture the LCD to last for years. Likewise, statements in Defendants' service manuals for these models assure any service personnel who may review such materials when presented with a model for repair that the "LCD panel is manufactured to provide many years of useful life." Such statements were made to limit inquiry and play down any suspicion of latent defects.

67.     Further, consumers cannot uncover the defective PSBs prior to purchase because they do not have insider knowledge like Defendants do regarding their testing and product issues. Likewise, customers were not permitted to inspect every component contained within the televisions they purchased. Funai further attempted to shift the burden of paying to repair the Defective TVs onto consumers by unconscionably limiting the labor warranty to 90 days, the parts warranty of 1 year, and charging undisclosed repair fees, none of which are disclosed prior to the consumer's purchase.

68.     Defendants had a duty to disclose the defect because, *inter alia* (i) the defect was plainly material and basic to the transaction and caused the Defective TVs to not work or function as televisions, (ii) Defendants previously assured consumers that their televisions would provide "many years of useful life," and therefore, they were required to correct their previous false representations, and (iii) the existence of the defect was known to both Funai Corp. and Funai Electric.

69.     Rather than disclose the defective PSB and its effects on the LCD and TVs, Defendants withheld such information from the public with the intention that it would increase their sales of the Defective TVs.

70.     Plaintiffs and the putative Class members would not have purchased the TVs, or would have paid significantly less, had the true circumstances—that the Defective TVs would fail shortly after the expiration of at least the labor warranty—been disclosed.

71.     Plaintiffs seek an order enjoining Funai Corp. and Funai Electric from continuing to fail to disclose the Defect, disgorging the Defendants of all monies wrongfully withheld from the Plaintiffs, actual damages in the form of overpayments reflecting the reduced value of the TVs, punitive damages, plus costs and reasonable attorneys' fees and such other relief as this Court deems necessary and just.

<u>SECOND CAUSE OF ACTION</u>
**Violation of the Arizona Consumer Fraud Act**
**Ariz. Rev. Stat. Ann. § 44-1522 *et seq.*,**
**(On behalf of Plaintiff Tom and the Arizona Subclass)**

72.     Plaintiffs incorporate all other allegations as if fully set forth herein.

73.     The Arizona Consumer Fraud Act, provides that:

the use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or **concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission**, in connection with the sale or

advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

74.     As explained above, Defendants Funai conceal a Defect that is basic and material to the sale of their TVs, and they do so with the intent that customers rely on the concealment and do not learn about the Defect prior to purchasing the Defective TVs. Plaintiff Toms and the putative Arizona Subclass members were misled and/or deceived into purchasing or overpaying for their Defective TVs.

75.     Defendants engaged in and had, and continue to have, direct knowledge of the deceptive and unfair practices and intentionally concealed or omitted material facts to the detriment of Plaintiff Toms and the Arizona Subclass by (1) designing and/or manufacturing the Defective TVs with faulty PSBs, (2) concealing their use of faulty PSBs in the design and distribution of the Defective TVs, and (3) dissuading further inquiry by, *inter alia*, falsely representing that the Defective TVs would operate for "years", imposing an unconscionably short express warranty period, and failing to disclose hidden repair costs.

76.     Plaintiff Toms' and members of the Arizona Subclass, as the consumers, lacked an opportunity to become knowledgeable about the Defect prior to purchasing the Defective TVs. By contrast, Defendants had immediate access to information regarding the TVs, including access to any internal testing that was performed on the Defective TVs and consumer reports and complaints.

77.     Moreover, Plaintiff Toms' and the Arizona Subclass members' purchase of the Defective TVs was on a take-it-or-leave-it basis and they members had no opportunity to negotiate the terms of the purchase.

78.     Defendants had a duty to disclose the defect because, *inter alia* (i) the defect was plainly material and basic to the transaction and caused the Defective TVs to not work or

function as televisions, (ii) Defendants previously assured consumers that their televisions would provide "many years of useful life," and therefore, they were required to correct their previous false representations, and (iii) the existence of the defect was known to both Funai Corp. and Funai Electric.

79.     Defendants intended that consumers would rely on their omissions and took steps to conceal information regarding the Defect by refraining from including such information in any advertisements or manual materials, affirmatively representing that the Defective TVs were of good quality, and otherwise refraining from informing customers regarding the short useful life of the Defective TVs.

80.     The operational life of a television and the use of faulty components in a TV are material and basic terms of any transaction for a television because they are likely to affect a consumer's choice of, or conduct regarding, whether to purchase a particular TV. Any deception related to the operational life of a television and the concealment of the use of faulty components in a TV is materially misleading.

81.     Moreover, the design and/or manufacture of the Defective TVs with faulty PSBs that have a propensity to fail in as little as five months or 190 hours is an unfair and unconscionable practice.

82.     Plaintiff Toms seeks actual damages caused by his overpayment for the Defective TVs, repair, costs, and all such other relief under Arizona's Consumer Fraud Act including costs and reasonable attorneys' fees.

83.     Plaintiff and the Subclass have suffered harm as a proximate result of Defendants' violations of law and wrongful conduct in the form of actual monetary damages because Plaintiff and the Subclass purchased televisions that were designed and/or manufactured

with a propensity to completely fail well before the advertised operational lifespan, paid to repair the Defective TVs' PSBs, and/or purchased replacement PSBs.

**THIRD CAUSE OF ACTION**
**Civil Conspiracy to Commit Fraud**
**(On behalf of Plaintiffs and the Class)**

84.     Plaintiffs incorporate all other allegations as if fully set forth herein.

85.     Defendants have arranged and agreed among themselves to commit fraud by designing, manufacturing, distributing, marketing, and selling the Defective TVs knowing that the Defective TVs suffer from the Defect.

86.     Both Defendants have profited from the arrangement at the Plaintiffs' and putative Class members' respective expenses.

87.     The Defendants have used unlawful means to achieve a lawful end, or lawful means to achieve an unlawful end.

88.     As a result of the damages suffered due to the Defendants' arrangement, Plaintiffs seek an order enjoining Funai Corp. and Funai Electric from conspiring to commit fraud through their concealment of the Defect, disgorging the Defendants of all monies wrongfully withheld from the Plaintiffs, actual damages in the form of overpayments reflecting the reduced value of the TVs, punitive damages, plus costs and reasonable attorneys' fees and such other relief as this Court deems necessary and just.

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(On behalf of Plaintiffs and the Class)**

89.     Plaintiffs incorporate all other allegations as if fully set forth herein.

90.     Defendants expressly warranted that the TV would last for years. The statement in their manuals that the "LCD Panel" and "LCD screen" were manufactured to provide "many

years of useful life" are express warranties that would lead a reasonable consumer to believe that the TV as a whole would provide "many years of useful life."

91.　　To the extent that Defendants attempted to limit the warranty for parts to one year or labor to ninety days, those time limits are inconsistent with the warranty that the TV was manufactured to provide "many years of useful life." Further, any ambiguities would be construed against the drafters, which are Defendants.

92.　　Enforcement of the one-year or ninety-day limitation would be unconscionable. Procedurally, consumers are not presented with the warranty until after their purchase and the terms are presented in a form manual on a take it or leave it basis without any room for negotiation. In substance, the attempted limited warranty is grossly one-sided and unfair, as Defendants know (but customers don't) that the Defective TVs' Defect will cause the TVs to fail just outside the ninety-day labor period, and potentially outside the one-year parts period. Further, Defendants don't disclose the replacement charges they levy on such repairs, which can exceed $100.

93.　　In breach of the express warranty that the TV was made to provide "many years of useful life" Defendants manufactured the TV so that it failed after minimal use, usually outside at least the labor warranty and often following the one-year parts warranty.

94.　　As an actual and proximate result of this breach by Defendants, Plaintiffs and the putative Class members have suffered actual damages in the amounts they overpaid for their Defective TVs and seek such damages and all other amounts and types of relief allowed by law.

**FIFTH CAUSE OF ACTION**
**Violation of Magnusson Moss Warranty Act**
**15 U.S.C. §§ 2301, *et seq.***
**(On behalf of Plaintiffs and the Class)**

95.　　Plaintiffs incorporate all other allegations as if fully set forth herein.

27

96.     Defendants expressly warranted that the LCD would provide many years of useful life. The statement in their service manuals that the "LCD Panel" and in their owner's manuals that the "LCD screen" were manufactured to provide "many years of useful life" are express warranties that would lead a reasonable consumer to believe that the TV as a whole would provide "many years of useful life." To the extent that Defendants attempted to limit the warranty for parts to one year or labor to ninety days, those time limits are inconsistent with the warranty that the TV was manufactured to provide "many years of useful life." Further, any ambiguities would be construed against the drafters, which are Defendants.

97.     Enforcement of the one-year or ninety-day limitation would be unconscionable. Procedurally, consumers are not presented with the warranty until after their purchase and the terms are presented in a form manual on a take it or leave it basis without any room for negotiation. In substance, the attempted limited warranty is grossly one-sided and unfair, as Defendants know (but customers don't) that the Defective TVs will fail outside the ninety-day labor period, and potentially outside the one-year parts period.

98.     Further, Defendants do not disclose the replacement charges they levy for such repairs, which can exceed $100. In breach of the express warranty that the TV was made to provide "many years of useful life" Defendants manufactured the TV so that they failed after minimal use.

99.     As an actual and proximate result of this breach, Plaintiffs and the putative Class members have suffered actual damages in the amounts they overpaid for their Defective TVs and seek such damages and all other amounts and types of relief allowed by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Norma Oliver and Matt Toms on behalf of themselves, the

Class, and the Arizona Subclass, respectfully request that this Court enter an order:

A.     Certifying this case as a class action on behalf of the Class and the Arizona

Subclass defined above, and over any class or subclasses as set forth following appropriate

discovery, appointing Plaintiffs Norma Oliver and Matt Toms as representatives of the Class,

Plaintiff Toms as the representative of the Arizona Subclass, and appointing their counsel as

class counsel;

B.     Declaring that Defendants' actions as set out above violate (i) the Arizona

Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1522 *et seq.*, and constitute (ii) fraudulent

concealment, (iii) breach of Defendants' express warranties, (iv) breach of the Magnusson Moss

Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, and (v) an unlawful conspiracy to commit fraud;

C.     Awarding injunctive and other equitable relief as necessary to protect the interests

of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the

wrongful and unlawful acts described herein and disgorging them of their unlawful profits and

monies retained;

D.     Awarding actual damages in amounts reflective of Plaintiffs' repair and

replacement costs, lost time, shipping, and the reduced value of the Defective TVs compared

with what the TVs should have cost, and statutory damages, including punitive and exemplary

damages where available, to Plaintiffs and the Class in an amount to be determined at trial;

E.     Awarding Plaintiffs and the Class restitution in an amount to be determined at

trial;

F.     Awarding Plaintiffs and the Class their reasonable litigation expenses and

attorneys' fees;

G.     Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent

allowable; and

H.     Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

**NORMA OLIVER and MATT TOMS**,
individually and on behalf of all others similarly
situated,

Dated: July 22, 2015                    By:  /s/ Stefan L. Coleman
                                              One of Plaintiffs' Attorneys

Stefan L. Coleman (#000382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Eve-Lynn J. Rapp (Admitted *Pro Hac Vice*)
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Stefan Coleman, an attorney, hereby certify that on July 22, 2015, I caused the foregoing to be filed by the Court's CM/ECF system and to be served on all counsel of record.

<u>  /s/   Stefan L. Coleman            </u>